**Floyd E. MORGAN and Clarence L. Morgan, Petitioners,**

v.

**W. S. NEAL, Warden, etc., Respondent.**

**Civ. A. No. 2448.**

United States District Court,
E. D. Tennessee,
Northeastern Division.

Feb. 13, 1970.

Memorandum Opinion April 29, 1970.

---

David F. Bautista, Elizabethton, Tenn., for petitioners.

Elmer F. Davies, Asst. Atty. Gen., Nashville, Tenn., for respondent.

## MEMORANDUM OPINION AND ORDER

NEESE, District Judge.

This is a further consideration of the application of the petitioners Floyd E. Morgan and Clarence L. Morgan for the federal writ of habeas corpus, in which, on multiple grounds, they claim they are in custody pursuant to the judgment of the Circuit Court of Cocke County, Tennessee in violation of their right under the federal Constitution to due process of state law. 28 U.S.C. § 2254(a). The question which will be considered specifically here has been presented to the courts of Tennessee and ruled upon, *sub silento* in some instances at least adversely to the applicants' contention. 28 U.S. C. §§ 2254(b), (c).

The only issue necessary to a decision on the current application is whether the applicants have established by convincing evidence that the factual determination by the state habeas corpus hearing judge, that the petitioners made a voluntary statement to a witness for the prosecution in the petitioners' criminal trial, admitting their guilt of the crime of robbery, under the record in such state court proceeding, considered as a whole, fairly supports such factual determinations. 28 U.S.C. § 2254(d) (8). The applicants challenge the sufficiency of the evidence in such proceeding to support such factual issue, and the state of Tennessee has now produced such parts of the record pertinent to such determination. 28 U.S.C. § 2254(e).

*Inter alia,* the written findings at volume II, page 30, of Honorable George R. Shepherd, the aforementioned state habeas corpus hearing judge, include therein the statement that the applicants

> made a voluntary statement to Sheriff O'Dell which is shown in this record and admitted their guilt insofar as robbery is concerned * * *.

Although it is unclear to this Court from the opinions of the appellate courts of Tennessee on what specific findings of the hearing judge, the respective affirmance of his decision and the denial of certiorari are based, the opinion of April 25, 1969 of the Court of Criminal Appeals of Tennessee, Morgan v. State, 445 S.W.2d 477, does state

> * * * The Supreme Court of this State affirmed the conviction of these petitioners in Morgan v. State [1967], 220 Tenn. 247, 415 S.W.2d 879. Reviewing the entire record of *their trial, in which the petitioners neither testified nor introduced any evidence,*

[emphasis supplied], the Court found and held that "The evidence further shows that both defendants admitted the crime in the presence of their lawyer in Georgia after they had been advised of their rights and had been allowed to consult with their lawyer."
* * *

Thus, it appears that the findings of the hearing judge in this aspect were approved by the intermediate appellate court of Tennessee, and relief was not accorded the petitioners on their application to the highest Tennessee court by review on certiorari.

The applicants claim that the aforementioned testimony of the aforenamed prosecution witness was perjured, and there appears to be evidence in the record which might render that contention viable. Certainly, except for such testimony of that witness, there is no evidence anywhere in the record to support a finding that either applicant ever admitted his guilt of the crimes of robbery charged.

On the aforementioned hearing, the applicant Mr. Clarence L. (Leon) Morgan, *inter alia*, testified:

"Q. 'Did you ever by implication or by express admission confess to this crime?'

"A. 'No, sir. I did not before a judge. As a matter-of-fact I said I would not confess to it in front of the Judge down there.'" —R., vol. II, p. 12,

* * * * * *

"Q. 'You did confess in the state of Georgia that you did commit this robbery in Cocke County, didn't you?'

"A. No, sir.'"—R., vol. II, p. 15;

and his coapplicant Mr. Floyd E. Morgan, *inter alia*, testified:

"Q. 'Mr. Morgan, I will ask you if during the consultation with him and during the questioning and interrogation by the officers, if you ever by implication or by express admission confess[ed] to

this crime here in Cocke County?'

"A. 'No, not to my knowledge; I haven't.'"—R., vol. II, p. 18,

* * * * * *

"Q. '* * * [Y]ou and your brother both confessed to this crime down there on the advice of your counsel in Georgia, didn't you?'

"A. '* * * No.'"—R., vol. II, p. 24.

This testimony is undisputed in this record. This Court has searched it diligently and can find no countervailing evidence of any kind. To the contrary, however, the Court does find an affidavit, the effect of which is diametrically opposed to the testimony of the prosecution's witness Mr. O'Dell that the applicants confessed to him. Therein, Charles M. Evert, Esq., T.C.A. § 40–3817, the attorney who represented the applicants in Georgia before their return to Tennessee to stand trial, stated under oath:

* * * [W]hile Floyd Morgan and Leon Morgan were confined in the County Jail of Muscogee County [Georgia], on a fugitive from arrest warrant from the State of Tennessee, Deponent was requested to counsel with Floyd Morgan and Leon Morgan at the County Jail. Floyd Morgan and Leon Morgan denied any guilt in the accusation on which the fugitive from arrest warrant was founded.

3.

Floyd Morgan and Leon Morgan denied any guilt on the part of Ruby Morgan or Betty Morgan on the accusation on which the fugitive from arrest warrants were issued against them.

4.

A conference was held with a deputy sheriff from the State of Tennessee who had come to Columbus, Georgia, to return Betty Morgan, Ruby Morgan, Floyd Morgan and Leon Morgan on said fugitive from arrest warrants. The deputy sheriff stated

that he would dismiss the fugitive from arrest warrants against Betty Morgan and Ruby Morgan if Floyd Morgan and Leon Morgan would admit their guilt in the accusation. The admission of guilt was absolutely refused by Floyd Morgan and Leon Morgan; and they vehemently insisted on their innocence.

5.

Floyd Morgan and Leon Morgan were greatly concerned that the false accusation would cause Ruby Morgan and Betty Morgan to be away from their children and they asked if there was any way the deputy sheriff would consider dismissing their fugitive from arrest warrants. The deputy sheriff was advised, then, that none of the parties would waive extradition.

6.

The failure to waive extradition resulted in the necessity of the deputy sheriff [sic: sheriff's] returning to Tennessee without the alleged fugitives. At late hour of the afternoon, just prior to the closing of the Courts, the deputy sheriff stated that he would dismiss the fugitive arrest warrants against Betty and Ruby if Floyd and Leon stated that Ruby and Betty had nothing to do with the actions alleged in the accusation.

7.

Floyd and Leon were advised that such a statement to the deputy sheriff would not be an admission of anyone's guilt if they made such a statement to the deputy sheriff. Thereupon, a statement was made, in my presence, to the deputy sheriff, that Ruby and Betty had nothing to do with the actions alleged in the accusation.

At no time did Floyd Morgan or Leon Morgan admit to me or anyone that they were guilty of any of the actions for which the fugitive from arrest warrants were issued.

\* \* \* Ex. 6

It is conceded for purposes of this consideration that it was for the state hearing judge to weigh the testimony of each witness and to assess each's credibility. But, insofar as the record of the habeas corpus proceedings before him is concerned, Sheriff O'Dell does not appear to have testified as to any voluntary statement made to him by the petitioners, there appears to be nothing akin to that shown in such record, and the testimony of both of the petitioners, denying ever having admitted their guilt, respectively, of the robbery involved, appears to this Court to be uncontradicted. Where, then, is any evidence to support such a finding of fact by the state hearing judge?

This Court is disturbed by the inclusion in the opinion of the Court of Criminal Appeals of Tennessee of a reference to the fact that neither defendant testified nor offered any evidence on their criminal trial. Neither was required to do either, and such an observation would appear to have no place in an appellate judicial utterance. This Court is more disturbed by the fact, however, that about all that appellate court found occasion to comment upon in affirming the decision of the state hearing judge was the fact that the Tennessee Supreme Court, 220 Tenn. 247, 415 S.W.2d 879, in affirming the conviction of the petitioners in their criminal trial, had stated that the evidence had shown that both petitioners had admitted their guilt of the crime in the presence of their lawyer with full knowledge of their rights and the assistance of counsel.

At the time Mr. Justice Chattin prepared his opinion, including the statement relied on so heavily (apparently) by the intermediate appeals court, he did not have the benefit, of course, of the affidavit of Georgia counsel for the petitioners. One wonders, in that event, if Mr. Justice Chattin would have found that

> [t]he sheriff appears to have testified that the petitioners told him in the presence of their attorney in Georgia, where they were apprehended as fugitives from justice in Tennessee, that they had come to the county of venue

in Tennessee " * * * and got the money. * * * ",

Morgan v. State, *supra*, 220 Tenn. at 250, 415 S.W.2d 879, in affirming their convictions. In any event, the cruciality of this testimony by Sheriff O'Dell on the criminal trial of the petitioners is patent. And, insofar as the record in the state habeas corpus hearing is concerned, there is nothing to indicate that Sheriff O'Dell was even present with his deputy in the commonwealth of Georgia when the purported admissions were made by the petitioners, although he may well have been in actual fact.

Accordingly, in addition to the denial to petitioners of due process of state law by way of crucial finding which appears to be unsupported by the evidence, a question is presented as to whether the state of Tennessee has denied them further due process of Tennessee law by the utilization of perjured testimony. The petitioners were, and are, certainly entitled to a consideration of that issue, and the evidence they presented thereupon seems to have been ignored in the factual determination made in the state proceedings.

It is the duty of this Court " * * * to examine for itself whether in fact and in law the due process clause of the federal Constitution has been violated. Comity properly requires that as to a State prisoner the application for relief be first made to the State courts, but if in truth the State is taking liberty without due process of law the exercise of this comity does not result in relieving the federal courts from doing their duty thereafter; and it has never been held that the refusal of the State court to relieve by habeas corpus bars the federal court from doing so in a proper case. * * * " Collingsworth v. Mayo, C.A. 5th (1949), 173 F.2d 695, 697 [3, 4].

The requirement of due process " * * in safeguarding the liberty of the citizen against deprivation through the action of the State, embodies the fundamental conceptions of justice which lie at the base of our civil and political institutions. * * * It is a requirement that cannot be deemed to be satisfied by mere notice and hearing if the State has contrived a conviction through the pretence of a trial which in truth is but used as a means of depriving a defendant of liberty through a deliberate deception of court and jury by the presentation of testimony known to be perjured. Such a contrivance by a State to procure the conviction and imprisonment of a defendant is as inconsistent with the rudimentary demands of justice as is the obtaining of a like result by intimidation. * * * Mooney v. Holohan, (1935), 294 U.S. 103, 112, 55 S.Ct. 340, 342, 79 L.Ed. 791, 794 [1, 2], rehearing denied (1935), Ex parte Mooney, 294 U. S. 732, 55 S.Ct. 511, 79 L.Ed. 1261.

This Court does not imply that Sheriff O'Dell committed perjury on the criminal trial of the petitioners. What the Court is stating is, that from the record seen of the proceedings before Judge Shepherd on the petitioners' application for the state writ of habeas corpus, it now appears that no consideration was given the affidavit of Mr. Evert, Esq.; and that, if the allegations of the petitioners to that effect are true, serious questions under the Fourteenth Amendment to the federal Constitution are presented, on which these petitioners are entitled to a hearing. Mattox v. Sacks (1962), 369 U.S. 656, 657, 82 S.Ct. 992, 993 [2], 8 L.Ed.2d 178, 179 (headnote 3).

This Court finds from all the foregoing that due proof has been made of the earlier-mentioned crucial factual determination by Judge Shepherd, and concludes that that part of the record of the state court proceeding in which the determination of such factual issue was made, which is pertinent to a determination of the sufficiency of the evidence of such factual determination, which was produced herein as a whole, is not fairly supported by such record, and that the applicants have established by convincing evidence that the factual determination by such state court was erroneous. 28 U.S.C. §§ 2254(d) (8). Thus,

such determination may not be presumed to be correct. 28 U.S.C. § 2254(d). As stated, this Court also will consider the issue of perjury to which there has been advertence.

The writ hereby is granted.

The application of the petitioners presenting an issue of fact as well as law, the respondent warden of the Tennessee state penitentiary will be required to produce the bodies of the petitioners Floyd E. Morgan and Clarence L. (Leon) Morgan before the undersigned judge in the courtroom of the United States District Court for the Eastern District of Tennessee, Northeastern Division, at Greeneville, no later than ten o'clock in the forenoon on Monday, March 2, 1970, at which time this Court will hear summarily and determine the facts and dispose of this application forthwith as law and justice require. 28 U.S.C. § 2243.

## MEMORANDUM OPINION

The petitioners Floyd E. Morgan and Clarence Leon Morgan, in custody of the respondent warden pursuant to the judgments of the Circuit Court of Cocke County, Tennessee, applied to this Court for the federal writ of habeas corpus, on the ground that they are in such custody in violation of the Constitution of the United States. 28 U.S.C. § 2254 (a). Finding that the petitioners had established that such part of the record of a state court proceeding in which disputed factual determinations were made was not fairly supported by the record of the state hearing, 28 U.S.C. § 2254 (d) (8), this Court entertained jurisdiction of the petitioners' claims that they are in the respondent's custody as a result of seven separate violations of the Constitution. Memorandum opinion and order of February 13, 1970.

As an evidentiary hearing was required on one such ground, the writ was granted by this Court, and evidence was received initially on March 2, 1970. The petitioner Mr. Leon Morgan testified upon this hearing that he was arrested on June 1, 1966 at his home in Columbus, Georgia, along with his brother and co-petitioner Floyd Morgan, the wives of both petitioners, and their mother Mrs. Ruby Morgan (Reed), by a Georgia law enforcement official, as fugitives from justice from Tennessee, where they were charged with having beaten and robbed Mary Jane Messer, Liza Messer and Martha Messer; that one of these wives was permitted to remain temporarily in the Morgan home to tend several small children until other arrangements could be made for their care; that they were represented in all their conferences with Tennessee law enforcment officers, who had come to Columbus to effectuate the return of all the fugitives to Cocke County, by retained counsel, Charles M. Evert, Esq.; that the Tennessee officer Mr. Everett McNabb was present at none of the sessions; that Mr. Tom O'Dell, sheriff of Cocke County, Tennessee, offered to dismiss all charges against the women fugitives if both he and his copetitioner confessed to the crimes; that, at no time, did he ever say to anyone that he was guilty of either such offense; but, that on his subsequent trials in Cocke County, Sheriff O'Dell testified that both petitioners had admitted to him their guilt, respectively, in the presence of their attorney in Columbus. His copetitioner Mr. Floyd Morgan testified in like manner on the hearing.

Sheriff O'Dell testified that, on arriving in Columbus from Cocke County, he talked with each fugitive separately after advising each of his constitutional rights to silence, to counsel, and against self-incrimination; that neither petitioner made any admissions to him until after they had retained and conferred with their counsel privately; that such attorney was present at some of the times he interviewed the petitioners; that the petitioner Mr. Floyd Morgan first admitted to him in the presence of Mr. McNabb that he (this Mr. Morgan) had been at the Messer home and had taken the money, pistol and quilts which were missing therefrom; that, subsequently the petitioner Mr. Leon Morgan admitted to him in the presence of Mr. McNabb that he and his copetitioner

had returned to Tennessee, after leaving there with his mother and their wives and coming to Georgia, gone to the Messer home, taken the money and returned to Georgia again, but that neither petitioner had beaten either woman; that these admissions were made after he had been advised by Mr. Evert that the petitioners were " * * * ready to admit the whole business * * * "; and, that on the trip back to Cocke County, the petitioners discussed openly and freely in his presence their participation in the crimes charged, claiming that the money taken was rightfully theirs* in any event.

Other witnesses testifying on this hearing were H. F. Swann, Esq., district attorney general of the second judicial circuit of Tennessee, and Mr. James Waldrop, an agent of the Tennessee Bureau of Criminal Identification. In view of the testimony of the petitioners that neither had ever confessed the crimes charged to anyone, Mr. Waldrop was permitted to testify that Mr. Floyd Morgan had confessed the crime to him in Tennessee, although Mr. Leon Morgan declined to talk with him about the charges, for purposes of impeachment. Neither Mr. McNabb, who was ill, nor Mr. Evert was offered as a witness.

The Court, being dissatisfied with the absence of these latter witnesses, continued the hearing until their testimony could be obtained. A further hearing was accordingly held on April 1, 1970.

After each petitioner, in open court, at the later hearing, waived the privilege of their communications with their attorney Mr. Evert testified that he went to the county jail in Columbus, which was located only two short blocks from his offices, in response to a call and was retained by the petitioners; that he conferred with the petitioners in a conference room at the jail which had been "bugged" theretofore by the prosecuting

solicitor of his county; that he declined to allow either petitioner to make any statement in that room, advising them not to say anything, intending to confer with them in the privacy of his law office after he had obtained their enlargement on bail bond; that neither petitioner ever told him whether he was guilty or not guilty of the offenses charged; that neither petitioner ever admitted his guilt of such offenses in his presence; that afterward the same day he received either a personal visit or a telephone communication from Sheriff O'Dell (who he assumed, was a deputy sheriff); that Sheriff O'Dell stated he had traveled a long way to retrieve the prisoners and hoped something could be worked out to enable him to transport the prisoners to Tennessee without returning to Columbus again; that he suggested to Sheriff O'Dell that the petitioners might waive extradition if the arrest warrants against their womenfolk were withdrawn; that, he was advised subsequently that Sheriff O'Dell wished him to return to the jail so Mr. O'Dell could again talk with the petitioners in his presence; that, he returned to the jail and consulted briefly with the petitioners and then asked Sheriff O'Dell to join the discussion; that Sheriff O'Dell, in a " * * stream * * * " of statements, stated to the petitioners that, if each would admit his guilt and assure him their womenfolk had nothing to do with the crimes, he would release the women, but that he (Sheriff O'Dell) wanted it clearly understood that such admissions and statements would be a confession on the parts of the petitioners; that, at some point, the petitioners said: "We understand", and he was " * * * worried * * * " if it might not have been immediately after Sheriff O'Dell's aforementioned "stream of statements"; that he told Sheriff O'Dell that the latter's only function there was to retrieve the prisoners, and that he should leave the

---

* This was said to have stemmed from the raising in the home community of the Morgans in Cocke County, Tennessee of a fund for the defense of a brother of the petitioners, who was being prosecuted in Georgia for committing a crime, and the failure of the Messer women to turn over to this brother all the fund accumulated in this manner.

obtaining of confessions to the prosecuting authorities in Tennessee; that he stated to the petitioners that their waiver of extradition proceedings would not constitute any admission of guilt of the crimes charged against them, that Sheriff O'Dell had no power to dismiss a fugitive from arrest warrant, and that their womenfolk could be re-arrested thereunder subsequently;

That he thereupon returned to his offices and, as he was undertaking to decide whether to cancel his usual late-afternoon tennis engagement, he received a message from the local sheriff at Columbus that the petitioners had decided to waive extradition and were then ready to be taken before a Georgia judge, who had just then become available; that he returned to the jail and accompanied the petitioners to that court hearing; that he made no inquiry of the petitioners concerning their decision to take the waiver step; then each waived extradition before the local judge; that, at no time did he advise Sheriff O'Dell that the petitioners were " * * * ready to admit the whole business * * * "; and, that, at no time, did either petitioner make in his presence the incriminatory admissions to which Sheriff O'Dell testified on the criminal trials of the petitioners in Cocke County.

It appeared to this Court that Mr. Evert, who was county attorney in Columbus for civil matters, had overriding concerns that the visiting sheriff, and, as such, a fellow-governmental employee, be the recipient of the traditional Southern hospitality while in his commonwealth. Although Mr. Evert was positive in his affidavit of March 16, 1967 in his denials that either petitioner had made any incriminatory statement in his presence, he was less than positive in his testimony on April 1, 1970. It was only through close examination by the Court that much positive testimony was elicited from this witness, and even then, he "chilled" its effect by additional refinements.

Mr. McNabb also testified on this second hearing. He is a policeman in Newport, Tennessee, who served Sheriff O'Dell as a guard on this excursion to Georgia. He testified that he and Sheriff O'Dell first went to the county jail on arriving in Columbus and afterward went to a federal penal institution, where all subsequent events occurred. He stated that Mr. Evert came to the federal institution in the afternoon, talked (he supposed) privately with the petitioners, then called him and Sheriff O'Dell to join the group, stating " * * * the boys are ready to be questioned. * * " He said that, under questioning by Sheriff O'Dell, both petitioners admitted the robbery, " * * * as I recall. * * * " He testified that he remained with Sheriff O'Dell constantly while they were in Columbus, except while Sheriff O'Dell and Mr. Evert conferred in the latter's law offices, and that he did not communicate by radio from Sheriff O'Dell's automobile with a Georgia police authority in an effort to determine what Sheriff O'Dell wished him to do. He testified further that the petitioners talked openly and freely concerning their respective participation in the crimes charged en route to Cocke County from Columbus.

The obvious key to the merits of the petitioners' contentions on this issue is whether the state of Tennessee has contrived a conviction of these petitioners through the pretense of trials through a deliberate deception of court and jury by the presentation of testimony " * * *known* to be perjured. * * * " (Emphasis supplied.) Mooney v. Holohan (1935), 294 U.S. 103, 112, 55 S.Ct. 340, 342, 79 L.Ed. 791, 794 [1, 2], rehearing denied (1935), Ex parte Mooney, 294 U.S. 732, 55 S.Ct. 511, 79 L.Ed. 1261; Palmer v. Russell, Etc., D.C.Tenn. (1969), [unpublished], civil action no. 5596, Southern Division, citing Miller v. Pate (1967), 386 U.S. 1, 87 S.Ct. 785, 17 L.Ed.2d 690, and United States ex rel. Hill v. Deegan, D.C.N.Y. (1967), 268 F.Supp. 580.

The transcripts of the records in the criminal trials of the petitioners reflect that the testimony concerning the con-

fessions of the petitioners was first elicited on cross-examination of Sheriff O'Dell in the absence of the jury by retained counsel for the petitioners in the case of State of Tennessee v. Leon Morgan and Floyd Morgan, no. 2747, Circuit Court of Cocke County, Tennessee. That portion of the witness' testimony is as follows:

\* \* \* \* \* \*

"Q. 'Well, they were concerned about their children, and it was about signing the extradition papers?'

"A. 'They signed extradition back there: said they wanted to come back up here and get it straightened out and get it over with.'

"Q. 'And that is what they were talking to their lawyer about?'

"A. 'Well, I don't know what they talked to him about; I wasn't in there with them. They told me that they did it, and that there wasn't anyone else with them; they came back up here by themselves and did it.'

"Q. 'That is your—?'

"A. 'That was their words, not mine.'
\* \* \* "

Immediately following such cross-examination, the district attorney general resumed direct examination in the presence of the jury. In the course of that examination, Mr. O'Dell testified:

\* \* \* \* \* \*

"A. ' \* \* \* why [sic: [W]hile] the lawyer was there at the jail \* \* \* they told me that there was no one involved in the thing up here except them, they came back up here and got the money. Their lawyer was listening.'
\* \* \* "

■ Thus, unless it can be said that Sheriff O'Dell, himself, as an officer of the state of Tennessee knowingly used perjured testimony in such trials, there is no proof that any official of the state of Tennessee knowingly presented testimony thereupon which was known to be perjured. It appears from the uncon-

tradicted testimony of the district attorney general that he was not aware of the purported confession of the petitioners until the petitioners' counsel developed it on cross-examination of Sheriff O'Dell. And, there is strong indication from the testimony of Mr. Evert that, correctly or incorrectly, Sheriff O'Dell had good reason to believe that the petitioners had admitted their crimes in his presence, and that of their lawyer in Columbus. Further, there is additional evidence, although contradicted by the petitioners, that the petitioners talked freely and openly of their respective complicities in the crime to Sheriff O'Dell and Mr. McNabb, after the episode when their Georgia counsel was present. This Court finds that the petitioners failed to carry their burden of proving their allegations on this issue by a preponderance of the evidence, as they are required to do. Humphries v. Green, C.A. 6th (1968), 397 F.2d 67, 70 [11].

The petitioners make also the following claims:

(1) That they were *denied* their *federal rights against double jeopardy,* in that they were convicted in immediately-consecutive trials for the same crime. (Although there is some authority for their contention, the prevailing rule is that, under the circumstances here presented, such did not constitute putting the petitioners twice in jeopardy for the same crime. Hoag v. New Jersey (1958), 356 U.S. 464, 465–467, 78 S.Ct. 829, 831–832, 2 L.Ed.2d 913, 916–917 (headnotes 1, 2).)

■ (2). That they were *denied* their *federal rights against unreasonable search and seizure,* in that they were convicted on the basis of evidence thus obtained. (The transcripts of the evidence in the criminal trials of the petitioners reveal that they were identified positively as the perpetrators of these crimes by the direct testimony of their great-aunts Liza Messer and Martha Messer and their great-grandmother Martha Jane Messer. This Court concludes the petitioners were not con-

victed on the basis of the circumstantial evidence provided by the fruits of the search of which they complain, but upon overwhelming direct evidence. *Cf.* Harrington v. California (1969), 395 U.S. 250, 254, 89 S.Ct. 1726, 1728, 23 L.Ed.2d 284, 288 [9].)

■ (3) That they were *denied* their *federal rights to the assistance of counsel* in their criminal trials, as well as in their hearing for post-conviction relief, in that: (a) their attorney in the first instance was ineffective in providing such assistance, and (b) another attorney was prevented from properly preparing their presentation at the hearing on this application for the state writ by action on the part of the state hearing judge.

(Fred L. Myers, Sr., Esq., a member of the bar of this Court, represented the petitioners as retained counsel at their criminal trials. The petitioners contend (a) that Mr. Myers was aware that Sheriff O'Dell had made a pretrial declaration in a public medium that they had confessed their crimes to him, that their counsel had been made aware by them that they had made no confession at any time, and that he failed or neglected deliberately to introduce evidence to contradict Sheriff O'Dell's testimony concerning this issue; (b) that Mr. Myers did not require the state of Tennessee to produce evidence against them in a preliminary hearing; and (c) that he did not make an issue of the validity of the warrants under which the petitioners were arrested and extradited. It would seem absurd and unreasonable to expect this Court to have a hearing to undertake to determine the competency and effectiveness of an attorney who represented petitioners in an unsuccessful defense against criminal charges. United States v. Lett, D.C.Ohio (1955), 143 F.Supp. 594, 597 [3], affirmed per curiam, C.A. 6th (1956), 236 F.2d 417. Ordinarily, defendants in criminal actions are bound by the acts of their counsel; otherwise, courts would be required to adjudicate the ability and competence of their counsel anytime defendants were convicted and complained thereafter of his incompetence. Kennedy v. United States, C.A. 5th (1958), 259 F.2d 883, 886 [3], reiterated in Richards v. United States, C.A. 5th (1967), 371 F.2d 611, 612. " * * * Mere improvident strategy, bad tactics, mistake, * * * [or] * * * carelessness * * * do not necessarily amount to ineffective assistance of counsel, unless taken as a whole the trial was a 'mockery of justice'. * * * " Edwards v. United States (1958), 103 U.S.App.D.C. 152, 256 F.2d 707, 708 [2], opinion by (now Chief Justice) Burger, certiorari denied (1958), 358 U.S. 847, 79 S.Ct. 74, 3 L.Ed.2d 82. The conscience of the Court is not shocked by the petitioners' allegations of errors in judgment on the part of their retained counsel, as they seek now to "try" Mr. Myers for their present plight.)

(As to the state habeas corpus hearing, a " * * * habeas corpus proceeding is not a criminal proceeding and consequently the Sixth Amendment [to the federal Constitution has no application to it. * * * " [footnote reference omitted.] Dorsey v. Gill (1945), 80 U.S. App.D.C. 9, 148 F.2d 857, 877 [54], certiorari denied (1945), 325 U.S. 890, 65 S.Ct. 1580, 89 L.Ed. 2003; see also Brown v. Johnston, C.A. 9th (1937), 91 F.2d 370, 372 [6], certiorari denied (1937), 302 U.S. 728, 58 S.Ct. 58, 82 L.Ed. 563.)

■ (4) That they were *denied* their *federal rights to due process of Tennessee law and to the equal protection of Tennessee law*, in that they were denied their rights under Tennessee law *to appeal* their respective judgments of conviction for the crime for which they are presently incarcerated and to a review by certiorari to the Court of Criminal Appeals of Tennessee by the Tennessee Supreme Court of actions adverse to them. (There is no merit to this contention, because the petitioners have failed utterly to show the occurrence of prejudicial errors at their criminal trials which would have required a reversal of their convictions. Peabody v. United

States, C.A. 9th (1968), 394 F.2d 175, 177 [2], certiorari denied (1969), 393 U.S. 1033, 89 S.Ct. 648, 21 L.Ed.2d 577, rehearing denied (1969), 394 U.S. 955, 89 S.Ct. 1279, 22 L.Ed.2d 493.)

 (5) That their *rights* under the Sixth Amendment to the federal Constitution *to fair and impartial trials were denied by the prejudice of the trial judge.* (That Amendment guarantees only a speedy and public trial by an impartial jury. Sixth Amendment to the federal Constitution. There is no guaranty therein of a federal right to a fair and impartial judge, as such.)

(6) That their *rights* under several Amendments to the federal Constitution were *infringed when they were held incommunicado* for a time in both Georgia and Tennessee. (This claim requires little discussion. The petitioners obtained the services of their Georgia counsel within a reasonable time before sacrificing any of their rights, and they were placed in an out-of-county jail for safekeeping as the result of a judicial determination that such was indicated after they were returned to Tennessee. There were no infringements of their federal rights in these connections.)

The time, attention and effort this Court has accorded these issues should serve as some indication that there were disturbing factors presented by these petitioners concerning their rights under the national Constitution. But then, they were involved in alleged criminal activity which cannot be fairly described as usual. After all this time, attention and effort, this Court is now satisfied that the petitioners have been deprived of no right guaranteed them by the federal Constitution which would entitle them to relief at the hands of this Court. It appears that law and justice require a disposition of this matter which will leave the respective judgments of conviction by the Circuit Court of Cocke County, Tennessee undisturbed. 28 U.S.C. § 2243.

The Court is mindful of the calm and efficient representation of their interests by these petitioners, and is grateful to David F. Bautista, Esq. for his services to the petitioners and the Court without monetary compensation in relation to the evidentiary hearings herein. The petitioners hereby are

Denied all relief. Rule 58, Federal Rules of Civil Procedure.