George N. Leighton, Willard J. Lassers, George Pontikes, Edwin H. Conger, Chicago, Ill., Arthur G. Greenberg, Peoria, Ill., Seymour Bucholz, Chicago, Ill., for petitioner.

William G. Clark, Atty. Gen. of Illinois, Roger W. Hayes, De Kalb, Ill., for respondent.

**UNITED STATES of America ex rel. Lloyd Eldon MILLER, Jr., Petitioner,**

**v.**

**Frank J. PATE, Warden of the Illinois State Penitentiary, Joliet Branch, Joliet, Illinois, Respondent.**

No. 63 C 1496.

United States District Court
N. D. Illinois, E. D.

Dec. 31, 1963.

PERRY, District Judge.

This cause comes on to be heard upon the petition of Lloyd Eldon Miller, Jr., relator (hereinafter called petitioner), the return thereto of the respondent, a traverse by petitioner, the record of the trial of petitioner in the Circuit Court of Hancock County, Illinois, the various appeals and further proceedings prior to the petition herein considered, and upon further evidence adduced at the hearing before this court.

The petitioner asserted jurisdiction of this court under Title 28 of U.S.C.A. §§ 2241 and 2251. Petitioner alleged violation of federal constitutional rights secured and guaranteed to him by the 14th Amendment of the Constitution of the United States.

Petitioner charged that on September 29, 1955, petitioner was sentenced to

death in a purported criminal court proceeding in the Circuit Court of Hancock County, Illinois, in a case People of the State of Illinois v. Lloyd Eldon Miller, Jr., Circuit Court of Hancock County, No. 4206.

Petitioner's conviction was affirmed by the Supreme Court of Illinois. People v. Miller, 13 Ill.2d 84, 148 N.E.2d 455 (1954). Thereafter petitioner applied for certiorari from the Supreme Court of the United States which was denied in 357 U.S. 943, 78 S.Ct. 1394, 2 L.Ed.2d 1556, reh. den. 358 U.S. 859, 79 S.Ct. 18, 3 L.Ed.2d 94 (1958). Post conviction petition under Illinois law was filed in the trial court and dismissed. This proceeding was affirmed in an unreported order by the Supreme Court of Illinois; and an application for certiorari from the Supreme Court of the United States was made and denied. Miller v. Illinois, 363 U.S. 846, 80 S.Ct. 1618, 4 L.Ed.2d 1729, reh. den. 364 U.S. 857, 81 S.Ct. 37, 5 L.Ed.2d 81 (1960). Following this petitioner filed a petition under Section 72 of the Illinois Civil Practice Act, Ill.Rev. Stat.1961, c. 110, § 72 in the trial court; and this proceeding was dismissed followed by an affirmance of the trial court order by the Supreme Court of Illinois in Miller v. People, 23 Ill.2d 420, 178 N.E. 2d 355 (1961). An application for certiorari from this order was made and denied in the Supreme Court of the United States, Miller v. Illinois, 369 U.S. 826, 82 S.Ct. 842, 7 L.Ed.2d 790 (1962).

Following these proceedings petitioner filed an application for habeas corpus in the United States District Court for the Northern District of Illinois, Eastern Division, sub nom., Miller v. Ragen, 60 C 1899. The petition for habeas corpus was dismissed, and dismissal affirmed by the Court of Appeals for the Seventh Circuit. Miller v. Pate, 300 F.2d 414 (1962). Following the Court of Appeals affirmance, a petition for writ of certiorari was filed and denied by the United States Supreme Court. 371 U.S. 898, 83 S.Ct. 193, 9 L.Ed.2d 131.

On September 13, 1962, while petitioner was proceeding with judicial remedies available to him, he was found to be a person mentally ill with psychosis; and he was transferred to the Illinois State Penitentiary, Psychiatric Division, Menard, Illinois. On March 4, 1963, the Chief Psychiatrist at Illinois State Penitentiary, Menard, Illinois, concurred in the diagnosis of petitioner that he was a person mentally ill and in need of mental treatment. On June 17, 1963, a sanity hearing was had in Hancock County Circuit Court. On June 20, 1963, a jury in the Circuit Court of Hancock County returned a verdict finding that at the time of the impaneling of the jury petitioner was a person sane.

Pursuant to Illinois law and practice, petitioner asked the Governor of the State of Illinois for a hearing before the Pardon and Parole Board on a petition for executive clemency and commutation of the death sentence imposed on petitioner by the Circuit Court of Hancock County. Upon due notice being given to all parties the Parole and Pardon Board of the State of Illinois conducted a hearing on petitioner's application for executive clemency and commutation of the death sentence. Thereafter, on August 20, 1963, commutation was denied and respondent will proceed to execute the death sentence unless relief is granted in this court.

Petitioner charges that he was arrested by police officers at 8:00 P.M. on November 28, 1955, and that he was interrogated, and that said interrogation was continued intermittently until 12:15 A.M. on December 1, 1955, when he signed a purported confession which he immediately repudiated.

Petitioner alleges that at all times during petitioner's arrest and incarceration and interrogation, petitioner suffered from a definite psychiatric illness characterized by a competent psychiatrist as an inadequate personality type, emotionally unstable who would sign any confession or statement to get out of an immediate predicament such as the arrest, incarceration and interrogation which began on November 28, 1955, to and including December 1, 1955. In support of

this allegation petitioner attached to his petition as Exhibit B the Affidavit of Donald L. Sweazey, M.D.

Petitioner alleges that during all of the judicial proceedings in this cause, including the petition for writ of habeas corpus heretofore described, neither petitioner nor his attorneys knew of certain facts which, if presented to the court, would show that the confession used to obtain petitioner's conviction in the Circuit Court of Hancock County was involuntary and coerced. Petitioner detailed a number of instances of what he charged was new evidence not heretofore available to him and alleged that because thereof the prosecuting attorney and the agents of the State of Illinois knew said purported confession that petitioner had signed was false and that notwithstanding said knowledge they caused said purported confession to be introduced as evidence against him at the trial in Hancock County, Illinois.

Petitioner further charges that the States Attorney of Fulton County prior to petitioner's trial, did say to all persons who had evidence for petitioner's defense that they, the said witnesses, had a constitutional right not to answer any questions asked of them by petitioner or his attorneys; that the said States Attorney of Fulton County well knew the fact to be that there were no provisions of the federal constitution or of the Constitution of the State of Illinois which gave any witness the right to refuse to answer any question of the defendant or those put to them by petitioner's attorneys; that as a result of the said representations known to be untrue made to the said persons by the said States Attorney of Fulton County, the said persons refused or failed to give any statements for and on behalf of said petitioner at his trial. The petitioner thereupon alleged certain examples of the foregoing charge.

Petitioner further alleges that there was certain hearsay evidence admitted at his trial concerning the identity of the blood of the victim as being "Type 'A' positive blood."

Petitioner charges that he was represented by inexperienced counsel in his trial and that his trial was impeded by the States Attorney's action in obtaining a citation against one of his attorneys for contempt of court during the trial and that he was thereby denied due process of law under the 14th Amendment and that he was further deprived of due process by suppression of evidence by the States Attorney who was prosecuting him and that the new evidence would establish that the prosecuting officials knew the purported confession and other evidence against him was not true and that some of the evidence was perjured testimony.

Petitioner charges that certain witnesses called the States Attorney and informed him that they had been talking to petitioner's attorney and were told that they had a constitutional right to refuse to talk to petitioner's attorney, and that in making such statement the States Attorney deprived petitioner of due process and interfered with his attorney preparing his case for trial in an adequate manner and deprived him of certain witnesses.

The petitioner prays the court to issue a writ of habeas corpus directing respondent to discharge him from custody.

After the filing of the petition, the court entered a rule upon the respondent to show cause as to why a writ of habeas corpus should not issue and respondent in due course admitted holding the petitioner upon the charges asserted, but denied that he was holding him illegally; denied that there was any issue of fact in dispute, and asserted that the whole matter was res adjudicata and purely a matter of law.

Petitioner filed a traverse, reasserting his original petition and again prayed the court to issue a writ of habeas corpus directing respondent to discharge him from custody.

## FINDINGS OF FACT

The court finds the following facts:

1. Lloyd Eldon Miller, Jr., was convicted upon evidence from three sources.

They were (1) petitioner's confession, later repudiated, (2) an alleged admission made to Betty Baldwin in the early evening after the murder occurred in the afternoon of November 26, 1955, and (3) circumstantial evidence.

2. Petitioner has presented a number of witnesses, exhibits and circumstantial evidence purporting to show that the constitutional rights of petitioner were violated by Fulton County authorities and officials of the State of Illinois in holding petitioner for questioning an excessive length of time; in coercing an alleged confession from him, which he thereafter repudiated; by withholding evidence at the trial that would have proved petitioner innocent; by coercing Betty Baldwin to testify against him falsely; by knowingly presenting perjured testimony against petitioner; by citing one of petitioner's attorneys for contempt without cause during the trial and interfering with petitioner obtaining a fair trial. None of the evidence here produced or heretofore offered or received in any of the proceedings support such alleged charges and the court finds all of such allegations to be false.

3. Petitioner has also alleged that the aforesaid evidence is new evidence that was not reasonably available to him and that if it had been presented to the jury, it should and would have resulted in a verdict of not guilty. Except for the testimony of Betty Baldwin, hereinafter considered, there was no new evidence presented that was not reasonably available to the petitioner at the time of his trial and conviction. Most of such alleged evidence, except that of Betty Baldwin, is irrelevant. That which is relevant, except the testimony of Betty Baldwin, is not contradictory to the evidence upon which petitioner was convicted and is not inconsistent with said evidence upon which the petitioner was convicted.

4. All of said evidence, except the testimony of Betty Baldwin, was available to petitioner when he filed a petition for writ of habeas corpus in this court, after he exhausted his State remedies, which case is entitled Miller v. Ragen, 60 C 1899, and which petition was dismissed, the dismissal affirmed by the Court of Appeals for the Seventh Circuit, and a petition for writ of certiorari denied by the United States Supreme Court as hereinabove set forth.

5. The court finds that none of the testimony given by any of the witnesses is in any way inconsistent with the evidence upon which the jury found the petitioner guilty but on the contrary confirms the fact that petitioner did not sleep in his bed during the afternoon in question and does not in any way explain his whereabouts between 10:00 A.M. and 4:00 P.M. on the day of the murder for which petitioner was found guilty.

6. The court finds the evidence tendered concerning whether the shorts, admitted as State's Exhibit three (3) on the trial of petitioner, were the kind worn by petitioner at the time in question and whether he could have worn them is evidence that the petitioner had available for him at the time of the trial and that such testimony given in this court was essentially the same testimony as was given at the trial in Hancock County except that an expert was put upon the stand to give an opinion as to whether the petitioner could have worn the shorts, and two sets of a different kind of shorts were exhibited as those belonging to petitioner at the time of the murder, but no offer to try the shorts on petitioner was made and it was obvious that he can wear such shorts. The court finds the petitioner could have worn the shorts admitted as Exhibit three (3) at the trial and that there was no new evidence presented that was not available at said trial of petitioner, and that was not in fact presented before the jury, except the opinion of a men's clothing salesman, the aforesaid so-called expert who testified in this proceeding.

7. The court finds that there was ample and competent testimony before the jury at the trial to support the theory of the State that the blood of the murdered girl was of "Type 'A' positive blood."

8. The court finds that no evidence whatsoever was suppressed by the State's Attorney or any other person interested in the prosecution that would have tended to prove the petitioner innocent. The State did have in its possession evidence that a particle taken from the vagina of the victim was probably a human hair but was not one belonging to petitioner. That evidence was of no consequence and did not prejudice petitioner's case.

9. The court finds that the State's Attorney was called by some of the State's witnesses and told that one of petitioner's attorneys had interviewed them. These witnesses stated that the attorney wanted to talk to them again and that they did not want to talk to him further. Each of them asked the State's Attorney if he or she had to talk to petitioner's attorney and in response the State's Attorney told each of said witnesses that he or she had a constitutional right to refuse to talk to petitioner's attorney.

10. The court finds that witness Betty Baldwin told the State's Attorney, the Sheriff of Fulton County, and their aides, and also the Chief of Police of the City of Canton and the Illinois state authorities, at all times before the trial that petitioner had admitted to her on the night after the murder of the victim that he had committed the act and that at no time did she ever tell or attempt to give any other version of her testimony to any person associated with the prosecution; and that none of said persons ever heard of any other version until Betty Baldwin under her present name of Betty Curry took the witness stand in this proceeding as a surprise witness, there being no reference to her testimony in the petition herein, and testified that she had lied and committed perjury on the original trial, more than seven years prior to her testimony here, and many years after the Statute of Limitations has run against prosecuting her for perjury in that trial, though a citation for contempt of court in the Circuit Court of Hancock County may very well lie.

11. The court makes no finding as to whether Betty Baldwin, now Betty Curry, committed perjury in the trial in the Hancock County trial or in this proceeding but does find that if she did so in Hancock County that neither the State's Attorney nor any other person associated with the case had any knowledge whatsoever that she was so doing, but, on the contrary, they all believed with good reason that she was then speaking truthfully.

12. The court specifically finds that neither the State's Attorney nor any other person knowingly presented any perjured testimony against petitioner or suppressed any testimony favorable to him on said trial or participated in any act that coerced or tended to coerce the confession of petitioner or abused him physically or mentally or otherwise or in any way deprived him of any of his constitutional rights under the 14th Amendment or any other constitutional rights under the federal constitution or the constitution of the State of Illinois.

13. The court finds that the evidence presented by petitioner's expert which tended to establish that some of the reddish-brown discolored spots on the shorts, State's Exhibit three (3) at the trial, were paint spots was not new testimony, inasmuch as there had never been any dispute but what the shorts did contain paint spots. The expert in question, on cross examination, stated that he was not qualified to say whether there were blood stains on the shorts at the time they were examined eight years ago and he admitted that blood disintegrates within a few days.

14. The court finds that at the trial the testimony of Donald L. Sweazey, M. D., was refused when tendered to support the contention of petitioner that his mental condition was such that he would make a false confession by way of suggestion and that the confession of petitioner was in fact false. That tender of testimony was refused for the reason that there was no foundation for such offer of proof. The ruling of the court was correct and was not a violation of

any of petitioner's constitutional rights. All of the rulings of the court were fair and impartial and the defendant and his attorneys had ample opportunity to present his case.

15. The court finds that petitioner was represented by skillful, energetic, able and devoted counsel and that they presented all evidence and every defense and made every human effort on his behalf, and that his allegation that they were inexperienced and did not represent him fairly is as false as his charges against the prosecution.

16. The court finds that the argument of the State's Attorney was fair and compatible with the evidence.

17. The court finds the confession of petitioner was not obtained by coercion or fraud or promise of reward but was voluntarily given by petitioner.

18. The court finds that if this court had been the finder of fact, that based upon the circumstantial evidence and the confession of petitioner it would have found the petitioner guilty without considering the testimony of Betty Baldwin, now Betty Curry, and further finds that there was ample evidence for such finding by the jury.

19. The court finds, however, that the jury did hear the testimony of Betty Baldwin and that in appearance she is a convincing witness; that from her testimony in this court she stands as a confessed perjuror either in the original trial or in this proceeding and is, therefore, a completely unreliable witness.

20. The court therefore finds that since the jury heard and considered her testimony without having before it the fact of her unreliability, this court is unable to say how the jury would have decided the case had it either heard the case without her evidence or, if with it, the evidence of her as a confessed perjuror.

21. The court finds that this new evidence, and this alone, unknown to petitioner or any other person until this proceeding, requires the court to issue the writ of habeas corpus.

22. The court further finds that since the trial of petitioner in Hancock County, he has been declared an insane person for a period of time as hereinabove recited and that there now exists a foundation for offering proof concerning his mental state or weakness in connection with his confession such as would warrant expert testimony on that question.

## CONCLUSIONS OF LAW

1. The court concludes upon the evidence before the court that all matters presented herein, except the testimony of Betty Baldwin, now Betty Curry, have either heretofore been presented to this court or an ample opportunity to present the same given when petitioner filed in this court his petition for writ of habeas corpus in case numbered 60 C 1899, entitled United States ex rel. Lloyd Eldon Miller, Jr., vs. Joseph Ragen, etc., which petition was dismissed and the order of dismissal affirmed by the Court of Appeals in this Circuit (Miller v. Pate, 300 F.2d 414), from which affirmance petitioner's application for certiorari was denied by the United States Supreme Court (371 U.S. 898, 83 S.Ct. 193, 9 L.Ed.2d 131).

2. The court concludes that even though the doctrine of res adjudicata applies, that since this court has conducted a full hearing and considered the whole record of the original trial of petitioner in Hancock County and all other proceedings, this court will and does consider all evidence and law presented herein, and upon all of the same concludes that none of petitioner's constitutional rights guaranteed to him by the Constitution of the United States of America or by the Constitution of the State of Illinois were or have been at any time violated by prosecuting officials of Fulton County or the State of Illinois or by any other person in the indictment, prosecution or post-trial proceedings against the petitioner, and that the petitioner had a fair trial in every respect and would not be entitled to have granted to him a writ of habeas corpus except for the new evidence of alleged perjury by Betty

Baldwin, now Betty Curry, herein otherwise considered by this court.

3. The only issue raised in this petition that has not become res adjudicata as hereinabove set forth is the testimony of Betty Baldwin that she lied and committed perjury in the trial of petitioner when she then testified that he admitted to her that he committed the murder for which petitioner was convicted.

4. The testimony of Betty Baldwin was one of the three sources of evidence considered by the jury at petitioner's trial, the others being circumstantial evidence and the confession of petitioner, which he promptly repudiated.

5. It would be contrary to all constitutional and moral principles of jurisprudence to permit a verdict of guilty to stand, as was decided by the Supreme Court in Townsend v. Sain, Sheriff, et al., 372 U.S. 293, 83 S.Ct. 745, 9 L.Ed.2d 770.

5. The court further concludes that even though this court has found that the petitioner had a fair trial in every respect and that his constitutional rights were in no way violated, and even though he was represented by competent counsel, for the reasons hereinabove set forth the writ of habeas corpus must issue and the respondent be ordered to discharge the petitioner, otherwise called the relator, from his custody pursuant to the verdict of guilty of the Circuit Court of Hancock County, Illinois, and that he be held upon the mittimus of the Grand Jury of Fulton County on the charge of murder and for a new trial and until a new trial shall be had, the same to take place within four months, the court retaining jurisdiction to carry out the terms of the Findings of Fact and Conclusions of Law herein found and entered, and in accordance with the Judgment of this court and the writ of habeas corpus issued by this court simultaneously herewith.

The foregoing Findings of Fact and Conclusions of Law herein made and concluded are hereby entered nunc pro tunc as of December 24, 1963.