## MILLER *v.* PATE, WARDEN.

No. 250. Argued January 11–12, 1967.—Decided February 13, 1967.

*Willard J. Lassers* argued the cause for petitioner. With him on the briefs were *Arthur G. Greenberg* and *Harry Golter.*

*Richard A. Michael,* Assistant Attorney General of Illinois, argued the cause for respondent. With him on the brief was *William G. Clark,* Attorney General.

1

*Maurice Rosenfield* argued the cause for Radio Station WAIT (Chicago) et al., as *amici curiae*. With him on the briefs was *William R. Ming, Jr.*

MR. JUSTICE STEWART delivered the opinion of the Court.

On November 26, 1955, in Canton, Illinois, an eight-year-old girl died as the result of a brutal sexual attack. The petitioner was charged with her murder.

Prior to his trial in an Illinois court, his counsel filed a motion for an order permitting a scientific inspection of the physical evidence the prosecution intended to introduce.[1] The motion was resisted by the prosecution and denied by the court. The jury trial ended in a verdict of guilty and a sentence of death. On appeal the judgment was affirmed by the Supreme Court of Illinois.[2] On the basis of leads developed at a subsequent unsuccessful state clemency hearing, the petitioner applied to a federal district court for a writ of habeas corpus.[3] After a hearing, the court granted the writ and ordered the petitioner's release or prompt retrial.[4] The Court of Ap-

---

[1] "Comes now the defendant, Lloyd Eldon Miller Junior, by William H. Malmgren, his attorney, and hereby moves the Court to enter an order permitting defendant to make, or cause to be made, upon such terms and conditions as to the court seems necessary to adequately insure the interests of the parties, a scientifice [*sic*] examination of the physical evidence to be introduced by the People in this cause and, to that end, enter an order requiring the People, by their attorney, to produce and make available all of said evidence for such an examination.

"For cause, movant says that such an examination is necessary to adequately prepare the defense herein."

[2] 13 Ill. 2d 84, 148 N. E. 2d 455.

[3] An earlier federal habeas corpus application had been unsuccessful. *Miller v. Pate,* 300 F. 2d 414.

[4] 226 F. Supp. 541.

peals reversed,[5] and we granted certiorari to consider whether the trial that led to the petitioner's conviction was constitutionally valid.[6] We have concluded that it was not.[7]

There were no eyewitnesses to the brutal crime which the petitioner was charged with perpetrating. A vital component of the case against him was a pair of men's underwear shorts covered with large, dark, reddish-brown stains—People's Exhibit 3 in the trial record. These shorts had been found by a Canton policeman in a place known as the Van Buren Flats three days after the murder. The Van Buren Flats were about a mile from the scene of the crime. It was the prosecution's theory that the petitioner had been wearing these shorts when he committed the murder, and that he had afterwards removed and discarded them at the Van Buren Flats.

During the presentation of the prosecution's case, People's Exhibit 3 was variously described by witnesses in such terms as the "bloody shorts" and "a pair of jockey shorts stained with blood." Early in the trial the victim's mother testified that her daughter "had type 'A' positive blood." Evidence was later introduced to show that the petitioner's blood "was of group 'O.' "

Against this background the jury heard the testimony of a chemist for the State Bureau of Crime Identification. The prosecution established his qualifications as an expert, whose "duties include blood identification, grouping and typing both dry and fresh stains," and who had "made approximately one thousand blood typing analyses

[5] 342 F. 2d 646.

[6] 384 U. S. 998.

[7] The petitioner has relied upon several different grounds for reversal of the judgment of the Court of Appeals. In deciding the case upon only one of those grounds, we intimate no view as to the merits of the others.

while at the State Bureau." His crucial testimony was as follows:

> "I examined and tested 'People's Exhibit 3' to determine the nature of the staining material upon it. The result. of the first test was that this material upon the shorts is blood. I made a second examination which disclosed that the blood is of human origin. I made a further examination which disclosed that the blood is of group 'A.' "

The petitioner, testifying in his own behalf, denied that he had ever owned or worn the shorts in evidence as People's Exhibit 3. He himself referred to the shorts as having "dried blood on them."

In argument to the jury the prosecutor made the most of People's Exhibit 3:

> "Those shorts were found in the Van Buren Flats, with blood. What type blood? Not 'O' blood as the defendant has, but 'A'—type·'A.' "

And later in his argument he said to the jury:

> "And, if you will recall, it has never been contradicted the blood type of Janice May was blood type 'A' positive. Blood type 'A.' Blood type 'A' on these shorts. It wasn't 'O' type as the defendant has. It is 'A' type, what the little girl had."

Such was the state of the evidence with respect to People's Exhibit 3 as the case went to the jury. And such was the state of the record as the judgment of conviction was reviewed by the Supreme Court of Illinois. The "blood stained shorts" clearly played a vital part in the case for the prosecution. They were an important link in the chain of circumstantial evidence against the petitioner,[8] and, in the context of the revolting crime with

---

[8] In affirming the petitioner's conviction, the Supreme Court of Illinois stated that "it was determined" that the shorts "were stained

which he was charged, their gruesomely emotional impact upon the jury was incalculable.[9]

So matters stood with respect to People's Exhibit 3, until the present habeas corpus proceeding in the Federal District Court.[10]   In this proceeding the State was ordered to produce the stained shorts, and they were admitted in evidence. It was established that their appearance was the same as when they had been introduced at the trial as People's Exhibit 3. The petitioner was permitted to have the shorts examined by a chemical microanalyst. What the microanalyst found cast an extraordinary new light on People's Exhibit 3. The reddish-brown stains on the shorts were not blood, but paint.

The witness said that he had tested threads from each of the 10 reddish-brown stained areas on the shorts, and that he had found that all of them were encrusted with mineral pigments ". . . which one commonly uses in the preparation of paints." He found "no traces of human blood." [11]   The State did not dispute this testimony, its counsel contenting himself with prevailing upon the witness to concede on cross-examination that he could not swear that there had never been any blood on the shorts.[12]

---

with human blood from group A," and referred to the petitioner's "bloody shorts." 13 Ill. 2d, at 89 and 106, 148 N. E. 2d, at 458 and 467.

[9] People's Exhibit 3 was forwarded here as part of the record, and we have accordingly had an opportunity to see it with our own eyes.

[10] At the state clemency hearing, some additional evidence was adduced to show that the shorts had not belonged to the petitioner.

[11] There were two other discolored areas on the shorts, one black and the other "a kind of yellowish color." A thread from the first of these areas contained material "similar to a particle of carbon." "[N]o particulates showed up" on the thread taken from the other.

[12] The witness pointed out, however, that "blood substances are detectable over prolonged periods. That is, there are records of researches in which substances extracted from Egyptian mummies have been identified as blood."

6

It was further established that counsel for the prosecution had known at the time of the trial that the shorts were stained with paint. The prosecutor even admitted that the Canton police had prepared a memorandum attempting to explain "how this exhibit contains all the paint on it."

In argument at the close of the habeas corpus hearing, counsel for the State contended that "[e]verybody" at the trial had known that the shorts were stained with paint.[13] That contention is totally belied by the record. The microanalyst correctly described the appearance of the shorts when he said, "I assumed I was dealing . . . with a pair of shorts which was heavily stained with blood. . . . [I]t would appear to a layman . . . that what I see before me is a garment heavily stained with blood." [14] The record of the petitioner's trial reflects the prosecution's consistent and repeated misrepresentation that People's Exhibit 3 was, indeed, "a garment heavily stained with blood." The prosecution's whole theory with respect to the exhibit depended upon that misrepresentation. For the theory was that the victim's assailant had discarded the shorts *because* they were stained with blood. A pair of paint-stained shorts, found in an abandoned building a mile away from the scene of the crime, was virtually valueless as evidence against the petitioner.[15] The prosecution deliberately misrepresented the truth.

---

[13] "Now, then, concerning the paint on the shorts, the petitioner yesterday introduced scientific evidence to prove that there was paint on the shorts, a fact that they knew without scientific evidence. Everybody knew, in connection with the case, whoever looked at the shorts, and I think that the Court can look at them now and know there is paint on them. This is not anything that was not disclosed to anybody. It is very obvious by merely looking at them . . . ."

[14] See n. 9, *supra*.

[15] The petitioner was not a painter but a taxi driver.

More than 30 years ago this Court held that the Fourteenth Amendment cannot tolerate a state criminal conviction obtained by the knowing use of false evidence. *Mooney* v. *Holohan,* 294 U. S. 103. There has been no deviation from that established principle. *Napue* v. *Illinois,* 360 U. S. 264; *Pyle* v. *Kansas,* 317 U. S. 213; cf. *Alcorta* v. *Texas,* 355 U. S. 28. There can be no retreat from that principle here.

The judgment of the Court of Appeals is reversed, and the case is remanded for further proceedings consistent with this opinion.

*It is so ordered.*