Silas **WILLIAMS**, Appellant,

v.

The **STATE** of Texas, Appellee.

No. 48621.

Court of Criminal Appeals of Texas.

July 17, 1974.

Rehearing Denied Sept. 18, 1974.

Randy Taylor, Dallas, for appellant.

Ralph Prince, Dist. Atty., Alvin G. Khoury, Asst. Dist. Atty., Longview, and Jim D. Vollers, State's Atty., Austin, for the State.

## OPINION

DAVIS, Commissioner.

Appeal is taken from a conviction for murder without malice. Punishment was assessed by the jury at two years.

The record reflects that the deceased died of gunshot wounds inflicted by appellant on the night of June 9, 1972. The appellant, testifying in his own behalf, stated that deceased attacked him and that he shot deceased in self-defense. Cindy Green, girlfriend of the deceased, testified that she was present in a trailer house shared by appellant and deceased when an argument began between deceased and appellant about the rent, that she went outside and thereafter she heard the first shot fired. Upon looking into the trailer she saw appellant firing a pistol into the bathroom. Investigating officers found deceased in the bathroom of the trailer with a gunshot wound in his head.

At the outset appellant contends that the "failure of the District Attorney to bring before the court materials in his possession and matters within his knowledge which would be evidence of appellant's innocence . . . ." requires reversal.

At the hearing on appellant's motion for new trial it was developed that the prosecutor had in his possession a sworn statement of Cindy Green made to police prior to trial which appellant urges would have aided in establishing his claim of self-defense and refuted the trial testimony of Green.

The statement in question is in the record before us and it is in accord with Green's trial testimony that she left when the argument started. It is further noted that the statement is corroborative of the testimony of appellant and his wife that Green had not seen the beginning of the fight. In her testimony at the trial Green related that on her initial reentry of the trailer (after the argument started) both appellant and deceased were bleeding from the face and that the argument had not concluded. She stated that appellant's wife started fighting deceased and said she was going outside to get a knife. When appellant's wife left the trailer for the announced purpose of getting a knife, Green followed her "to try to stop her." After they went outside, and while Green was pleading with appellant's wife that getting a knife "wouldn't solve a thing," gunshot was heard. According to Green, upon reentry of the trailer, appellant was observed "standing in front of the bathroom firing a gun inside the bathroom." The written statement of Green in possession of the prosecutor reflects the following occurred when she made her first reentry into the trailer:

"I came back in after a short while and Silas [appellant] was on the floor and Ronald [deceased] was over him with his fist doubled up and I guess that Ronald had knocked him down. I also noticed that Ronald's left ear was bleeding so he had been hit in the ear by either Tommie Jean [appellant's wife] or Silas while I was outside. Tommie Jean

proceeded to jump on Ronald for knocking Silas down. I stepped in between Tommie Jean and Ronald and she pushed me out of the way. Tommie Jean was telling Ronald to get his stuff and leave and Ronald was telling her to come on and he would let her have it too. I went back outside and Tommie Jean followed me outside and said she was going to get her knife out of the car."

The State's theory of the case was that deceased had gone to the bathroom for the purpose of cleaning himself up after the altercation, had no weapon and posed no danger to appellant. The court instructed the jury relative to the law regarding abandonment of difficulty.

■ "It is well settled that the suppression of evidence, regardless of the good faith or bad faith of the parties, is not ground for reversal unless it had a material prejudicial effect on the judgment." Esquivel v. State, Tex.Cr.App., 506 S.W.2d 613; Means v. State, Tex.Cr.App., 429 S. W.2d 490. The written statement of Green is in accord with her trial testimony that she did not see the first blow delivered in the altercation. There is no variance in her observation of what occurred after she heard the gunshot. Considering the evidence as a whole, especially the jury verdict of murder without malice, we conclude that the additional observations reflected in the statement relative to what the witness observed upon first reentering the trailer did not have a material prejudicial effect upon the verdict.

No error is shown.

As a corollary to his claim that material evidence was deliberately suppressed, appellant contends the State either knowingly relied on perjured evidence or purposefully failed to correct false testimony. The allegation rests on the premise that witness Green's trial testimony was directly contradicted by her earlier sworn statement to the police.

■ The knowing presentation of perjured testimony by the State violates due process. Alcorta v. Texas, 355 U.S. 28, 78 S.Ct. 103, 2 L.Ed.2d 9 (1957); Pyle v. Kansas, 317 U.S. 213, 63 S.Ct. 177, 87 L. Ed. 214 (1942); Mooney v. Holohan, 294 U.S. 103, 55 S.Ct. 340, 79 L.Ed. 791 (1935); Means v. State, Tex.Cr.App., 429 S.W.2d 490. Cf. Miller v. Pate, 386 U.S. 1, 87 S.Ct. 785, 17 L.Ed.2d 690 (1967). The failure to correct evidence known to be false is also error. Giglio v. United States, 405 U.S. 150, 92 S.Ct. 763, 31 L. Ed.2d 104 (1972); Napue v. Illinois, 360 U.S. 264, 79 S.Ct. 1173, 3 L.Ed.2d 1217 (1959); Means v. State, supra.

■ In the instant case the necessary fact of perjury or false evidence has not been established. As this Court said in Haywood v. State, Tex.Cr.App., 507 S.W. 2d 756, perjury is a serious charge which must be clearly supported by the evidence. Appellant has not shown perjury by the witness Green and therefore the State cannot be faulted for relying on that testimony or for failing to correct it. That the trial testimony was not identical to the written pretrial statement does not make out perjury. As in Haywood, there was in the case under consideration no material misrepresentation of fact to the appellant's prejudice. No error is shown.

Appellant contends that his retained counsel in the trial court was ineffective and he was thereby deprived of a right guaranteed him by the Sixth and Fourteenth Amendments of the United States Constitution.

In support of this contention appellant makes an in-depth review of the conduct of the trial by appellant's retained counsel. In making this analysis he lists "errors of omission" and "errors of commission."

■ We do not deem it necessary to discuss each of the claimed faults of trial counsel since the adequacy of an attorney's services must be gauged by the totality of

the representation. Lee v. State, Tex.Cr. App., 505 S.W.2d 816; Coble v. State, Tex.Cr.App., 501 S.W.2d 344; Satillan v. State, Tex.Cr.App., 470 S.W.2d 677.

In examining appellant's claim of ineffective counsel we view such complaints in the light of what the Court said in Williams v. Beto, 354 F.2d 698 (5th Cir. 1965):

> "As no two men can be exactly alike in the practice of the profession, it is basically unreasonable to judge an attorney by what another would have done in the better light of hindsight."

■ Further, it must be borne in mind that a lawyer cannot be expected to win a hopeless case; nor is he to be adjudged incompetent because he tries to do the impossible and fails. Curtis v. State, Tex.Cr. App., 500 S.W.2d 478; Morrow v. State, Tex.Cr.App., 500 S.W.2d 811.

■ We have reviewed the record in light of the holdings of this Court addressed to this subject and conclude that appellant received adequate representation from his retained counsel in the trial court.

Appellant, in his final ground of error, contends appellant's trial counsel was incompetent because of mental inability.

■ At the hearing on appellant's motion for new trial Doctor Jeffery DeWare was called as a witness by appellant and testified that appellant's trial counsel had suffered a stroke in 1965 (trial was in May, 1973). On cross-examination it was developed that appellant's trial counsel had represented Doctor DeWare in connection with a claim arising from the death of the doctor's daughters while traveling on an airline in 1968. The record reflects the following testimony relative to counsel's mental competency:

> "Q. [prosecutor] . . . Now, did the result of the stroke to your best medical . . . did it in any way affect Mr. McCasland's [appellant's trial counsel] mental capacity?

> "A. [Dr. DeWare] Well, no. I don't think I would have retained him or hired him as a lawyer if I thought it. I didn't think so, no, sir."

We reject appellant's final contention relative to incompetency of trial counsel.

The judgment is affirmed.

Opinion approved by the Court.