No. 84–1224. EVANS v. VIRGINIA. Sup. Ct. Va. Certiorari denied.

JUSTICE MARSHALL, with whom JUSTICE BRENNAN joins, dissenting.

I continue to adhere to my view that the death penalty is under all circumstances cruel and unusual punishment forbidden by the Eighth and Fourteenth Amendments, and I would vacate the judgment of the Supreme Court of Virginia insofar as it left

---

undisturbed the death sentence imposed in this case. *Gregg* v. *Georgia*, 428 U. S. 153, 231 (1976) (MARSHALL, J., dissenting). However, even if I believed that the death penalty could constitutionally be imposed under certain circumstances, I would grant certiorari to decide the constitutional validity of the death sentence imposed here.

## I

Petitioner Wilbert Lee Evans was convicted of capital murder in April 1981. At his sentencing hearing, the State urged the jury to recommend the death sentence based on Evans' "future dangerousness." To prove future dangerousness, the State relied principally upon the records of seven purported out-of-state convictions. The State's prosecutor later admitted that he knew, at the time he introduced the records into evidence, that two of them were false. App. to Pet. for Cert. 50a–52a. One of the seven "convictions," for assault on an officer with a deadly weapon, had been dismissed on appeal. Another, for engaging in an affray with a deadly weapon, had been vacated on appeal, and Evans had been reconvicted in a trial *de novo;* the conviction for one crime was, however, counted as two convictions.[1] After considering Evans' prior "history," the jury determined that there was a probability that he would commit criminal acts of violence that would constitute a continuing serious threat to society, see Va. Code § 19.2–264.4C (1983), and it recommended the death penalty based solely upon its finding of future dangerousness. 228 Va. 468, 323 S. E. 2d 114 (1984). Evans was sentenced to death on June 1, 1981.

On October 16, 1981, while Evans' direct appeal was pending, the Supreme Court of Virginia ruled that, when a capital defendant's right to a fair and impartial jury is violated during the sentencing phase of trial, a death sentence must be commuted to life imprisonment. *Patterson* v. *Commonwealth*, 222 Va. 653, 283 S. E. 2d 212 (1981). The court premised its decision on a construction of the then-existing death-penalty statute under which only the jury that finds a capital defendant guilty can fix his punishment. Because the original jury, tainted by the constitutional error, could not be reconvened to resentence the defendant, the

---

[1] In addition, several of the other convictions had been obtained when Evans was without the benefit of counsel. App. to Pet. for Cert. 3a–4a.

death sentence had to be reduced automatically to life imprisonment. *Id.*, at 660, 283 S. E. 2d, at 216.

This ruling was in effect when the Virginia Supreme Court considered Evans' direct appeal. Therefore, had that court known of the error in the sentencing hearing and vacated Evans' death sentence, he would very likely have received a life sentence.[2] But the State not only failed to confess its error, it listed all the purported convictions, including the erroneous ones, in its brief. App. to Pet. for Cert. 42a. In sustaining Evans' death sentence, the State Supreme Court relied, in part, on this inaccurate record. *Id.*, at 31a. When Evans petitioned this Court for a writ of certiorari, the State again relied on the misleading records of convictions in its brief in opposition. *Id.*, at 46a. Certiorari was denied. 455 U. S. 1038 (1982).

The State did not notify Evans that it would confess its error regarding the false evidence until March 28, 1983. App. to Pet. for Cert. 73a. *On that day*, the Virginia Governor signed into law a bill that amended the state death-penalty statute to allow for resentencing by a different jury after a death sentence was set aside, thus effectively overruling *Patterson*. See Va. Code § 19.2–264.3C (1983). The State subsequently confessed error to the trial judge on April 12, 1983. At a hearing to consider the propriety of resentencing Evans, the prosecutor at Evans' trial admitted that he knew the evidence that he introduced at the sentencing hearing was false. The judge then ordered a new sentencing hearing. A new jury recommended the death penalty, and petitioner was again sentenced to death.

## II

In *Napue* v. *Illinois*, 360 U. S. 264 (1959), this Court reversed a conviction obtained through the use of false evidence that was known to be false by representatives of the State. Since *Napue*,

---

[2] In its brief in opposition, the State urges that the opinion of the Virginia Supreme Court implied that the court would not have applied the *Patterson* rule to Evans' sentence. A fair reading of the opinion below, however, indicates that the court was not rejecting Evans' contention that *Patterson* would have controlled his case had it not been legislatively overruled; rather, the court was rejecting Evans' *ex post facto* argument, which was based on the subsequent overruling of *Patterson*. See 228 Va. 468, 476–477, 323 S. E. 2d 114, 118–119 (1984).

this Court has adhered to the principle that a conviction obtained by the knowing use of false evidence is fundamentally unfair. See, *e. g.*, *United States* v. *Agurs*, 427 U. S. 97, 103 (1976); *Miller* v. *Pate*, 386 U. S. 1, 7 (1967). The rule of *Napue* is undoubtedly applicable to the sentencing phase of a capital trial. In this case, the prosecutor admitted that he knowingly introduced false evidence at Evans' sentencing hearing to demonstrate "future dangerousness." Evans was therefore deprived of the fundamental fairness due him under the Fourteenth Amendment.

To remedy this injury, the state court ordered a new sentencing hearing free from the taint of false evidence. This remedy, however, was inadequate to undo the harm suffered by Evans. For the State compounded its original misconduct by concealing the deception during both Evans' direct appeal and his petition for certiorari to this Court. Had the State honestly confessed the error, petitioner's sentence would almost certainly have been commuted to life imprisonment under the then-existing statute. Instead, the State did not confess error until nearly two years after the original death sentence had been imposed, by which time the death-penalty statute had been amended.

The court below ruled that, even assuming that the prosecutor's handling of the sentencing hearing involved serious prosecutorial misconduct, the State was not barred from seeking the death penalty a second time. In doing so, it relied on the holding in *United States* v. *Morrison*, 449 U. S. 361 (1981), that drastic remedies should not be used to redress "deliberate" and "egregious" violations of constitutional rights "absent demonstrable prejudice, or substantial threat thereof," to the defendant. *Id.*, at 365. The court concluded that Evans' resentencing hearing removed any prejudice. But the court considered only the prejudice suffered by Evans at the initial sentencing. It failed to account for the harm done to Evans afterwards, during his direct appeal. Had the State not continued to rely on the false evidence, very likely the death sentence would have been commuted to life imprisonment.

The State argues, nevertheless, that this Court cannot consider the harm done to Evans by its conduct during the appeal. It directs our attention to the finding by the trial judge that the State did not delay its confession of error until after the death-penalty statute was amended just to have a second chance to sentence

Evans to death. App. to Pet. for Cert. 20a. This argument misses the point. Regardless of its purpose in regard to the amendment, the State's continued, knowing use of false evidence during the direct appeal and petition for certiorari, and its failure to disclose this misconduct, constituted egregious conduct that seriously harmed Evans.[3]

## III

To my mind, the only way to remedy the federal constitutional violation Evans has suffered would be for the Virginia courts to consider, *nunc pro tunc*, how *Patterson* would have applied to this case. I would grant the petition for certiorari to consider whether the court below was constitutionally obligated to make this inquiry. Accordingly, I dissent from the denial of certiorari.

---

[3] Further, whether the delay of nearly two years in confessing error was intentional or merely negligent has no bearing on the degree of prejudice suffered by Evans. "Clearly, a deliberate attempt by the government to use delay to harm the accused, or governmental delay that is 'purposeful or oppressive,' is unjustifiable. . . . The same may be true of any governmental delay that is unnecessary, whether intentional or negligent in origin." *Dickey* v. *Florida*, 398 U. S. 30, 51 (1970) (BRENNAN, J., concurring).

Nor does it matter whether the state attorney who appeared at the sentencing hearing, and who admitted that he knew the evidence on which the State relied was false, took part in preparing the State's briefs in the Virginia Supreme Court or in this Court. The prosecutor's office is an entity, not just a group of isolated individuals, and the prosecutor is responsible for assuring that relevant information is communicated among the lawyers in the office. See *Giglio* v. *United States*, 405 U. S. 150, 154 (1972); *Moore* v. *Illinois*, 408 U. S. 786, 810 (1972) (MARSHALL, J., concurring in part and dissenting in part).