23 F.3d 408
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
 Efrem Zembalis TONEY, Plaintiff-Appellee,
v.
James M. DAVIS, Defendant-Appellant.
 No. 93-5072.
 United States Court of Appeals, Sixth Circuit.
 April 20, 1994.
 
 Before: NELSON and SILER, Circuit Judges; and WELLFORD, Senior Circuit Judge.
 WELLFORD, Senior Circuit Judge.
 
 
 1
 In March, 1982, Valerie Williams, a young black female, was murdered in Chattanooga, Tennessee. Terry Slaughter, then a Chattanooga police detective, investigated the murder. The defendant, James M. Davis, then Assistant Chief of Police and Chief of the Homicide Division of the Chattanooga Police Department, supervised the investigation. The following year, a jury convicted the plaintiff, Efrem Zembalis Toney, of the murder. The state trial court denied Toney's motion for a new trial and the Supreme Court of Tennessee upheld the conviction. Thereafter, the Tennessee courts denied two post-conviction relief petitions. Following a hearing on the third petition, however, the Criminal Court of Hamilton County Tennessee ordered a new trial, setting aside Toney's conviction, releasing him from prison pending the new trial. On July 16, 1990, the District Attorney General for Hamilton County Tennessee moved for an order of dismissal based in part on Terry Slaughter's statement that he lied in his testimony during the original trial.
 
 
 2
 On January 11, 1991, Toney filed the present action, alleging that the defendants[1] violated his constitutional rights during the investigation and prosecution of Williams' murder. Specifically, Toney alleges that defendants destroyed evidence, failed to disclose exculpatory information, threatened and intimidated identification and alibi witnesses, and lied under oath during the course of the trial.
 
 
 3
 Following an order dismissing all the municipal defendants, the only remaining claim of malicious prosecution against defendant Davis was based upon a violation of 42 U.S.C. Sec. 1983. Davis filed a motion for summary judgment, which he amended to include the defense of qualified immunity, arguing that the alleged conduct did not violate clearly established law at the time of the events in controversy. The district court denied Davis' motion for summary judgment and also denied a subsequent renewed motion for summary judgment based on additional affidavits.
 
 
 4
 Davis subsequently filed a notice of appeal contending he was entitled to qualified immunity. On appeal, Davis argues that the trial court erred by considering Toney's allegations instead of considering only admissible evidence[2] as required by Rule 56(e) of the Federal Rules of Civil Procedure. Davis also argues that a supervisory police officer, who participated in obtaining several initial statements by witnesses during a murder investigation is entitled to qualified immunity when there has been no showing by admissible evidence of any affirmative acts of misconduct during those interviews. Finally, Davis argues that a supervisory police officer, who does not participate in the alleged mistreatment of witnesses, but who allegedly discovered this mistreatment after it had occurred and did not discipline the officer responsible (or take any other remedial action), is still entitled to qualified immunity. He maintains there was no showing by admissible evidence of any other misconduct by him as supervisor during the investigation. We limit our discussion to the question of qualified immunity.
 
 
 5
 The standard for qualified immunity is that a defendant, acting under color of office, is immune from liability unless he violated clearly establish constitutional rights of which a reasonable person would have known. Mitchell v. Forsyth, 472 U.S. 511 (1985); Harlow v. Fitzgerald, 457 U.S. 800 (1982). We must determine "whether the legal norms allegedly violated by [Davis] were clearly established at the time of the challenged actions or, ... whether the law clearly proscribed the action [Davis] claims he took." Mitchell, 472 U.S. at 528.
 
 
 6
 Before evaluating the relevant case law, however, it is crucial to determine whether Toney alleges a violation of a constitutional "right." See Siegert v. Gilley, 500 U.S. 226 (1991). Therefore, in a Sec. 1983 action, Toney must establish (1) a deprivation of rights, privileges, or immunities secured by the Constitution or laws, see Baker v. McCollan, 443 U.S. 137 (1979) and (2) that Davis deprived him of this constitutional right under color of law. Dunn v. Tennessee, 697 F.2d 121, 125 (6th Cir.1982), cert. denied, 460 U.S. 1086 (1983). To establish an action based on common-law malicious prosecution Toney must show: (1) the commencement of prosecution proceedings against him, (2) legally caused by Davis, (3) the termination of those proceedings in favor of Toney, (4) the absence of probable cause for such proceedings, (5) the presence of malice therein, and (6) damage to Toney by reason thereof. Id. at 125 n. 4. In some instances, a victim of common-law malicious prosecution can show a constitutional violation redressable under Sec. 1983. See id. The district court concluded that this is such a case, and we agree. We also note that it was clearly established at the time of Davis' actions that law enforcement officers could not intimidate witnesses, fabricate evidence, or facilitate perjured testimony. See, e.g., Miller v. Pate, 386 U.S. 1 (1967).
 
 
 7
 Toney was prosecuted for first degree murder. Toney was convicted and served seven years in prison, before a Tennessee Criminal Court overturned the conviction. Toney's alleged alibi witness failed to appear at trial[3] and evidence was destroyed or otherwise not made available to defense counsel.
 
 
 8
 Davis argues, however, that because there was an objective basis for "probable cause to prosecute Toney for the murder of Valerie Williams ... Toney's claims under Sec. 1983 based on malicious prosecution must fail." Defendant's Brief 43. Specifically, Davis argues that Patricia Ann Witherow and Dorothy M. Franklin identified Toney as the man they saw on the night of Valerie Williams' murder.
 
 
 9
 Slaughter's version of the facts contradicts Davis' assertion that there were "objective" factors supporting probable cause for the murder charge. In his affidavit, Slaughter stated that he questioned both Witherow and Franklin, and Witherow stated that she had not seen anything and Franklin stated that "she had heard something and looked out." On a later occasion, Officer Slaughter again interviewed the women and showed them a photographic line-up, which included a photograph of Toney. Neither woman identified a suspect. After reporting the lack of identification to Davis, Slaughter stated that Davis decided to talk to the women. He talked to the two women alone for approximately thirty minutes. Slaughter stated that Davis "came out of his office with a grin on his face and took the photographs back into his office." When he came out of his office again, he threw the pictures down and claimed that each woman had identified Toney as the assailant. Slaughter continued, that after taking their statements, he "knew that Witherow and Franklin had been manipulated into changing" their statements. After expressing his concerns about the investigation, Slaughter stated that defendant Davis told him "not to worry about it. [I]f [Toney], ... was not in jail for this then he would be there for something else." Id. Slaughter also asserted that Davis consistently maintained an atmosphere of racial bias in his department.
 
 
 10
 Slaughter also stated in his affidavit that based on the witnesses' statements it would be physically impossible for either of them to have identified the assailant from their respective locations. He also stated that the forensic evidence did not implicate Toney. Specifically, he said that the footprints made at the scene did not match Toney's tennis shoes. Slaughter therefore concluded that the only evidence linking Toney to the scene of the murder was the inconsistent information given by Witherow and Franklin.
 
 
 11
 In response to Slaughter's affidavit, Davis offered the affidavits of Witherow and Franklin, in which both women indicate that their statements were not improperly influenced. These affidavits, however, are in apparent conflict with an FBI report.
 
 
 12
 In Poe v. Haydon, 853 F.2d 418, 426 (6th Cir.1988), cert. denied, 488 U.S. 1007 (1989), we held:
 
 
 13
 [S]ummary judgment would not be appropriate if there is a factual dispute (i.e., a genuine issue of material fact) involving an issue on which the question of immunity turns, such that it cannot be determined before trial whether the defendant did acts that violate clearly established rights.
 
 
 14
 The district court concluded that the affidavits of Davis and Slaughter were irreconcilable. The affidavits of Franklin and Witherow contradicted an FBI report. Therefore, the district court concluded that it was unable to determine, without choosing between the parties' different factual accounts, whether Davis acted in good faith. See Jackson v. Hoylman, 933 F.2d 401 (6th Cir.1991). The district court denied Davis' motion to dismiss on the issue of qualified immunity.
 
 
 15
 We find no error in this decision since ultimately this case involves a determination of credibility. Summary judgment based on qualified immunity is inappropriate in this case, but we express no opinion on the merits of Toney's claim beyond our consideration herein of Davis' claim of qualified immunity with its good faith component. Accordingly, we AFFIRM the district court's order denying Davis' motion for summary judgment.
 
 
 
 [1]
 The plaintiff named the City of Chattanooga and the City of Chattanooga Police Department as defendants, arguing that the actions of the individual defendants were attributable to the City, since the individual defendants were alleged City policy-makers. A motion to dismiss the City of Chattanooga Police Department as a defendant was granted on August 7, 1991. Subsequently, the defendants Davis and the City of Chattanooga also filed a motion to dismiss the complaint as to both of them on March 6, 1991, which was granted in part and denied in part on August 7, 1991
 
 
 [2]
 Davis argues that in opposition to his motion for summary judgment, Toney did not submit "one shred of admissible evidence." In opposition to a motion for summary judgment, however, a nonmoving party need not produce evidence in a form that would be admissible at trial in order to avoid summary judgment. Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986). Instead, the relevant inquiry in whether the nonmoving party has designated "facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e)
 
 
 [3]
 Davis argues that Toney's inconsistent statements to the police during the investigation and during his deposition suggest that the witness in question could not have been an alibi witness. Davis concludes that "the alleged mistreatment of Boogaloo Robinson, even if it occurred exactly as defendant Slaughter states it did, did not in any way violate plaintiff's civil rights since Boogaloo had no evidence which would have cleared plaintiff of the murder of Valerie Williams." Whether Robinson was a credible alibi witness, however, is for a jury to decide, and if Davis participated in suppressing his testimony, then those actions may have violated Toney's constitutional rights