**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT



| | |
|---|---|
| EUN SUK JOO,<br><br>    Petitioner - Appellant,<br><br> v.<br><br>MATTHEW CATE,<br><br>    Respondent - Appellee. | No. 08-55953<br><br>D.C. No. 07-3418-GPS-RNB<br><br>MEMORANDUM [*] |

Appeal from the United States District Court
for the Central District of California
George P. Schiavelli, Presiding

Argued and Submitted May 4, 2010
Pasadena, California

Before: CLIFTON and BYBEE, Circuit Judges, and KORMAN, [**] District Judge.

This is an appeal from a judgment of the United States District Court for the

Central District of California, adopting a recommendation of a United States

---

[*] This disposition is not appropriate for publication and is not precedent except as provided by 9th Cir. R. 36-3.

[**] The Honorable Edward R. Korman, Senior United States District Judge, Eastern District of New York, sitting by designation.

1

magistrate judge that a petition for a writ of habeas corpus filed by Eun Suk Joo be denied. Joo was convicted after jury trial of one count of residential burglary in violation of California Penal Code § 459 and two counts of attempted residential burglary in violation of California Penal Code § 664, and he was sentenced to a five-year term of incarceration. After his timely filed petition pursuant to 28 U.S.C. § 2254 was denied, we granted a certificate of appealability limited to the issues we proceed to address.

## I.

Before trial, the prosecutor sought an *in limine* ruling on the admission of a prior similar act that Joo allegedly committed four years earlier in the same neighborhood in which the alleged burglaries occurred. After listening to a summary of the proffered evidence, the trial judge reserved judgment on whether the evidence would be admissible. Prior to opening statements, Joo's counsel asked that the prosecutor be prohibited from making mention of the prior bad act evidence in light of the pending ruling on admissibility. The judge refused to do so. The prosecutor then described the prior similar act to the jury during his opening statement in a manner that turned out to be materially inaccurate. Subsequently, the trial judge held a hearing to determine the admissibility of the prior bad act evidence. After reviewing the police report and hearing argument from counsel, the judge excluded the evidence

because he determined that the prejudicial effect outweighed its probative value.

Contrary to Joo's argument, the issue here is not whether the prosecutor deliberately lied to the jurors about the evidence underlying the criminal act. Because habeas corpus relief is not granted for the purpose of "disciplining the prosecutor," the issue is whether his unsworn and misleading representation was sufficiently prejudicial to warrant habeas corpus relief. *United States v. Hasting*, 461 U.S. 499, 509-11 (1983). While *Hasting* involved a direct appeal applying a harmless beyond a reasonable doubt standard, the harmless error standard the prosecutor must meet in habeas corpus proceedings is less stringent. *See Brecht v. Abrahamson*, 507 U.S. 619, 636-38 (1993). On collateral review, the relevant question is whether the error had a "substantial and injurious effect or influence in determining the jury's verdict." *Id.* at 637 (internal quotation marks omitted). Under this standard, habeas petitioners are not entitled to relief based on trial error "unless they can establish that it resulted in 'actual prejudice.'" *Id*.

Particularly apposite here is *United States v. Jones*, 592 F.2d 1038 (9th Cir. 1979), in which we held:

> A prosecutor's misstatement of the evidence does not automatically call for reversal. Instead, the court will reverse only if there is a serious possibility of prejudice to the defendant.
>
> In the instant case we cannot find a serious danger of

3

prejudice to Jones. Both the court and the prosecutor warned the jury that the prosecutor's [opening] statements were not evidence; we have noted repeatedly that cautionary instructions can help neutralize the possible prejudicial effects of prosecutorial misstatements. Moreover, the prosecutor did not later rely on the misstatements. Finally, the Government's inability to produce evidence which it promised the jury would appear to harm the Government's case rather than the defense.

*Id.* at 1043-44 (internal citations and footnote omitted); *see also United States v. Monks*, 774 F.2d 945, 955 (9th Cir. 1985); *United States v. Vargas-Rios*, 607 F.2d 831, 838 (9th Cir. 1979).

This holding is sufficient to dispose of Joo's argument. The prosecutor's disputed statement was limited to one paragraph in the opening, and the incident to which he referred was not mentioned again throughout the remainder of the seven-day trial. The prejudicial effect of the alleged misconduct was further diminished because the jury was instructed by the trial judge that "[t]he lawyers are given some latitude in terms of their impressions to you right now as to what they believe the evidence is going to show. What you have to do is decide the case based on the evidence you actually hear from the witness stand and the law I give to you at the end of the trial." This instruction, which jurors are presumed to have followed, *see Richardson v. Marsh*, 481 U.S. 200, 211 (1987), was reinforced in the judge's final instructions to the jury that the statements of the attorneys are not evidence. Moreover, as was true

4

in *Jones*, 592 F.2d at 1044, the "Government's inability to produce evidence which it promised the jury would appear to harm the Government's case rather than the defense."

**II.**

Joo's ineffective assistance of counsel claim concerns the same prior consistent conduct evidence that was ruled inadmissible by the trial judge. Joo contends that defense counsel's failure to move for a mistrial when the evidence was excluded constituted "deficient performance." This argument presumably derives from the warning the trial judge gave the prosecutor that, if the prosecutor mentioned the prior similar act "and it turns out not to be admissible, it could be something that is so prejudicial . . . to the defendant . . . that we might be discussing the issue of a mistrial."

Joo's claim is without merit. First, it is hardly clear from this statement that there was a reasonable probability that the trial judge would have granted a mistrial. Moreover, even if we assume that he would have granted such relief, the prejudice prong of *Strickland v. Washington*, 466 U.S. 668 (1984), would be met only if the petitioner was actually entitled to such relief. "[T]he 'benchmark' of an ineffective-assistance claim is the fairness of the adversary proceeding, and . . . in judging prejudice and the likelihood of a different outcome, '[a] defendant has no entitlement

5

to the luck of a lawless decisionmaker.'" *Nix v. Whiteside*, 475 U.S. 157, 175 (1986).

> "Thus, an analysis focusing solely on mere outcome determination, without attention to whether the result of the proceeding was fundamentally unfair or unreliable, is defective. To set aside a conviction . . . solely because the outcome would have been different but for counsel's error may grant the defendant a windfall to which the law does not entitle him."

*Lockhart v. Fretwell*, 506 U.S. 364, 369-70 (1993) (footnote omitted).

The argument that petitioner was entitled to a mistrial simply involves a restatement of the argument that he is entitled to have his conviction set aside and given a new trial because of the prejudice to his right to a fair trial that occurred as a result of the prosecutor's opening statement. The conclusion that he was not entitled to such relief after trial necessarily resolves the issue of whether he was prejudiced by his attorney's failure to move for a mistrial prior to verdict.

## III.

Joo argues that the prosecutor also committed misconduct on two separate occasions during his closing statement: first, when he commented in his closing that Joo had not informed the police that he was acting under the influence of cocaine at the time of the burglary when in fact he had, and, second, when he commented in closing that Joo did not have any cash in his possession when the prosecutor knew that Joo had ATM and credit cards in his wallet.

## A.

In his closing argument, the prosecutor made the following statement:

> But what did the defendant say? We have two statements
> from the man, one to Officer Stone after he arrested him
> and brought him to Devonshire Station, and then one I
> think before that at the hospital with Sergeant Dutta.
> According to the defense, this man was already, I suppose,
> sober by that time. That's why the officers aren't seeing
> any indication he's under the influence of illegal drugs.
> *Does he say anything to them to explain his behavior, "hey,*
> *man, I was coming down from a cocaine high."*

(Emphasis added). This statement drew an objection from Joo's counsel on the ground that the prosecutor had successfully objected to the admission of Joo's third statement to Detective Anderson, during which Joo stated that he had been on crack cocaine and that he was coming down from a high. Joo's counsel contended that the prosecutor was "able to argue evidence that he sought excluded from the jury to say it doesn't exist and wasn't present[,] . . . [which constitutes] prosecutorial misconduct." The objection was overruled.

In *Miller v. Pate*, 386 U.S. 1 (1967), the Supreme Court held that the Due Process Clause was violated by the prosecutor's summation expressly relying on evidence he introduced that he knew to be false. In condemning this behavior, the Supreme Court observed that:

> [m]ore than 30 years ago this Court held that the Fourteenth
> Amendment cannot tolerate a state criminal conviction

7

> obtained by the knowing use of false evidence. There has been no deviation from that established principle. There can be no retreat from that principle here.

*Id.* at 7 (internal citations omitted); *see also Napue v. Illinois*, 360 U.S. 264, 269 (1959); *Mooney v. Holohan*, 294 U.S. 103, 112-13 (1935).

This clearly established principle was violated when the prosecutor falsely represented to the jury that Joo did not make any post-arrest statements to the police indicating that he was under the influence of cocaine. The prosecutor was not only essentially testifying as an unsworn witness, he was also testifying falsely. *See United States v. Kojayan*, 8 F.3d 1315, 1322-23 (9th Cir. 1993). Significantly, the district court denied relief without considering whether the prosecutor's comment violated the Due Process Clause. Instead, it concluded that the conduct constituted harmless error. This is a close case. Nevertheless, under the *Brecht v. Abrahamson*, 507 U.S. 619 (1993)*,* standard for resolving this issue, the district court was correct.

The excluded statement, referring to the effect of Joo's cocaine consumption, was only first mentioned in the last of four post-arrest statements, given over the course of two days, one of which was recorded and played to the jury. More significantly, Joo's conduct after he was surprised by the victims in each of the three dwellings is inconsistent with the notion that cocaine had somehow overwhelmed his ability to engage in rational behavior and that he was hallucinating. When Avila (the

8

first victim) saw Joo at her apartment building, Joo replied that he worked at the building, which Avila knew to be false. After Avila told Joo that she would call the police, Joo raised his hand, said that "there was no problem," and left the area. After Arellano (the second victim) saw Joo holding her window screen, Joo dropped the screen and fled. When Nowell (the third victim) observed Joo's arm through the window, Joo said "I didn't do anything. It wasn't me." Nowell cursed at Joo, and after a few moments, Joo "left, but he walked calmly as if he hadn't been the one." Moreover, when he was subsequently confronted by Nowell and his cohorts, Joo attempted to flee. While Nowell testified that Joo appeared to be under the influence of drugs and that his conduct was consistent with other individuals he had observed under the influence of drugs in the area surrounding the apartment complex, Joo's conduct appears to reflect a consciousness of guilt rather than hallucinatory behavior induced by cocaine. Significantly, Joo's expert witness, the only defense witness who testified on this issue, acknowledged that individuals under the influence of cocaine are capable of performing intentional acts.

In sum, although the prosecutor's comments were relevant to Joo's only defense—whether he was capable of forming the specific intent to commit a felony after entering the various dwellings—there was substantial other evidence from which the jury could have found that, while he may have been under the influence of cocaine

9

when he committed the offenses of which he was convicted, he was capable of forming the specific intent necessary to sustain a conviction for burglary. Under these circumstances, we cannot say that the prosecutor's unfortunate summation had the kind of substantial injurious effect on the verdict that would require habeas corpus relief. *Brecht*, 507 U.S. at 636-38.

## B.

During closing argument, the prosecutor made the following statement:

> A person who's addicted to cocaine, I suppose, as the defense would like you to believe, who is coming down and is in a drug neighborhood, may very well be desperate to get more drugs. And we know that the currency on the streets in order to get drugs is cash money and that he doesn't have any cash money on him. So what is he going to do with his inhibitions that are lowered? He's going to do something stupid like this in a desperate effort to get some sort of property that maybe he can use to get drugs.

The statement drew an objection from Joo's counsel on the grounds that the prosecutor was again "arguing the evidence that was sought to be excluded." Immediately after the objection, the judge admonished the jury to "decide this case based on the evidence you receive during the trial and the legal instructions I have given you."

Joo contends that because he had ATM and credit cards in his possession at the time of the burglaries, evidence of which was excluded from trial, the prosecutor's

10

statement constituted misconduct. Unlike the comment with respect to Joo's post-arrest statements to the police, this statement was not contrary to the evidence. Indeed, it is undisputed that there was no cash found in Joo's possession at the time of his arrest and that "the currency on the streets in order to get drugs is cash money." Credit cards are of no use, and the district court found that there was no evidence that there was cash to be drawn on even if an ATM was readily available at 6:00 to 7:00 in the morning. Joo's quarrel, if any, is with the ruling excluding evidence indicating the possibility of access to sources of cash. The district court held that the exclusion of this evidence did not constitute an "objectively unreasonable application of clearly established Supreme Court law," and we declined to issue a certificate of appealability with respect to that issue.

While we conclude that habeas corpus relief is unavailable here, we are concerned with the conduct of the prosecutor. In *Berger v. United States*, 295 U.S. 78, 88 (1935), the Supreme Court held that a prosecutor is a "representative not of an ordinary party to a controversy, but of a sovereignty whose obligation to govern impartially is as compelling as its obligation to govern at all; and whose interest, therefore, in a criminal prosecution is not that it shall win a case, but that justice shall be done." The prosecutor in this case engaged in conduct that was inconsistent with his obligation to ensure that justice was done. Nevertheless, for the reasons stated

11

above, the judgment of the district court is **AFFIRMED**.