**UNITED STATES of America, Appellee,**

v.

**Beckham MARTIN, III, Appellant.**

**No. 81–5132.**

United States Court of Appeals,
Fourth Circuit.

Argued April 2, 1982.

Decided Oct. 6, 1982.

---

Donna J. Katos, Fred A. Talbot, Richmond, Va. (Murray J. Janus, Bremner, Baber & Janus, Richmond, Va., on brief), for appellant.

Marvin J. Caughman, Asst. U. S. Atty., Columbia, S. C. (Henry Dargan McMaster, U. S. Atty., Columbia, S. C., Helen Melissa Rawl, Second Year Law Student on brief), for appellee.

Before PHILLIPS and ERVIN, Circuit Judges, and KISER,* District Judge.

ERVIN, Circuit Judge:

Following the seizure of approximately 17,000 pairs of blue jeans from two trucks pursuant to a warrant that was based in part on an informant's tip, Beckham Martin, III, was convicted by a jury for transporting stolen goods in interstate commerce in violation of 18 U.S.C. §§ 2 and 2314. At a pre-trial suppression hearing, Martin argued that the search was unconstitutional because the government had failed to establish the requisite probable cause for issuance of a search warrant and that there were no exigent circumstances justifying a warrantless search. Although the district court determined that the warrant was invalid, it upheld the search, finding that there was probable cause to search the trucks and that the warrantless search was valid under the automobile exception to the warrant requirement.

Martin contends on appeal that the search was unconstitutional and, further, that the evidence at trial was insufficient to establish that the jeans he transported were stolen. We find no merit in Martin's contentions and, accordingly, affirm his conviction.

I.

On January 31, 1981, Agent John Fradella of the Federal Bureau of Investigation (F.B.I.) was informed by a confidential source that 17,000 pairs of Wrangler blue jeans were being delivered to L & W Wholesale, Ninety-Six, South Carolina, from Birmingham, Alabama, at 9:00 a.m. on February 2, 1981, in two unidentified trucks by an individual known as Ron Rawls. The seller was asking $4.00 a pair, for a total selling price of $68,000, which was to be paid in cash. Agent Fradella subsequently contacted F.B.I. agents in Greensboro, North Carolina, where the Blue Bell Wrangler Corporation headquarters is located, and learned that on January 18, 1981, over 20,000 pairs of blue jeans had been stolen from the Wrangler plant in Arab, Alabama. After contacting F.B.I. agents in Birmingham, Agent Fradella learned that the stolen jeans had the brand name Wrangler, a pre-January 1981 date on the fly label, the letters OA on the back of the buttons, and were identified by lot numbers 400 SNVR and 400 SWNVR. A Blue Bell security officer also informed F.B.I. agents that Blue Bell would not sell the jeans in ques-

* The Honorable Jackson L. Kiser, United States District Judge for the Western District of Virginia, sitting by designation.

tion for $4.00 per pair since the actual manufacturing cost exceeded $4.00 per pair and the normal wholesale price was $8.00 per pair.

Agent Fradella included all of this information, plus the fact that the confidential informant previously had given reliable information to the F.B.I., and had been the victim of past dealings with interstate shipments of stolen apparel, in an affidavit for a search warrant. On February 1, 1981, the magistrate issued a warrant to search for stolen Wrangler blue jeans in trucks that were scheduled to arrive at L & W Wholesale the following day.

Ron Rawls and the defendant, Beckham Martin, III, arrived at L & W Wholesale in a van shortly before 9:00 a.m. the next morning, and presented a sample pair of Wrangler jeans to Larry Redd, the proprietor of L & W Wholesale, for inspection. Rawls confirmed that the jeans were not seconds and that he had 17,000 pairs to be sold for $4.00 per pair. After Redd indicated that he wanted to buy the jeans, he introduced "this man representing Blue Bell," John Fradella, and explained that Fradella was going to examine the jeans to ensure that they were first quality. Agent Fradella then observed that the sample jeans were first quality, student-size Wranglers, and asked to see the rest of the jeans. Rawls explained that the jeans were in trucks at the Thunderbird Motel in nearby Greenwood, South Carolina, and that he could arrange to have them brought to L & W Wholesale. Agent Fradella indicated that he was in a hurry and offered to follow Rawls and Martin to the motel in his car.

When Agent Fradella arrived at the motel, he informed Rawls and Martin that he actually was an F.B.I. agent and that he had probable cause to believe that the two U-Haul trucks in the motel parking lot contained stolen blue jeans. Agent Fradella asked Martin if he would consent to a search of the trucks. Martin agreed to a

search only after Agent Fradella stated that he had a search warrant.[1] Martin relinquished the key to one truck but the lock to the other truck had to be broken when the key could not be located. Both trucks contained thousands of pairs of jeans bound together in bundles of one dozen. A representative from Blue Bell was present and determined that the jeans had the same lot and cut numbers as those stolen from the Wrangler plant in Arab, Alabama.

Martin subsequently was indicted on one count of transporting stolen goods in interstate commerce in violation of 18 U.S.C. §§ 2 and 2314. At a pre-trial suppression hearing Martin argued, inter alia, that the search warrant was invalid because the supporting affidavit, which contained information based in part on the tip of a confidential informant, was insufficient to establish probable cause under Aguilar v. Texas, 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964), and Spinelli v. United States, 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637 (1969). Martin argued further that even if there was probable cause to search the trucks, there were no exigent circumstances justifying a warrantless search.

The district court found that the affidavit did not satisfy the Aguilar test for probable cause because it did not disclose any of the "underlying circumstances" from which the magistrate concluded that the informant's information was as the informant stated it would be. Aguilar, 378 U.S. at 114, 84 S.Ct. at 1513. The court found, however, that probable cause was established once the informant's tip was confirmed by Agent Fradella's actual observation at L & W Wholesale on February 2, 1981, and that the warrantless search was lawful under the automobile exception to the warrant requirement. Evidence of the search subsequently was introduced at Martin's trial, and he was convicted of transporting stolen jeans in interstate commerce.

---

1. Agent Fradella explained that he had a search warrant after Martin asked what would happen if he did not consent to the search. Martin agreed to execute a consent form if Agent Fra-

della noted on the document that the trucks "(would) be searched under search warrant if necessary."

## II.

### A.

As previously noted, the district court held that the search warrant in this case was invalid. It is not necessary for us to address the correctness of this ruling, in light of the conclusion which we reach in Part II. B. of this opinion, and we decline to do so.

### B.

■ We turn now to the issue of whether there was probable cause to support a warrantless search of the trucks. Although *Aguilar* and *Spinelli* are warrant cases, the probable cause standard established in those cases is equally applicable to warrantless searches. *See McCray v. Illinois,* 386 U.S. 300, 304, 87 S.Ct. 1056, 1058, 18 L.Ed.2d 62 (1967). Thus, an otherwise inadequate informant's tip may support a finding of probable cause if the information is corroborated to the extent that the tip and the corroborating information together meet the *Aguilar* standard for probable cause. *Spinelli,* 393 U.S. at 415, 89 S.Ct. at 588.

The district court found that the affidavit was insufficient to establish probable cause because the informant did not reveal the source of his information or otherwise demonstrate a legitimate basis of knowledge by providing detailed information of "minute particularity." *Spinelli,* 393 U.S. at 417, 89 S.Ct. at 589. Even if the finding was correct, an issue we do not decide, the information contained in the affidavit was verified by Agent Fradella's on-the-scene observation, thereby removing any doubt about the validity of the informant's tip. As the informant had predicted, Rawls arrived at L & W Wholesale at 9:00 a.m. on February 2, 1981, prepared to sell 17,000 pairs of Wrangler blue jeans at $4.00 per pair. Although Rawls and Martin did not arrive at L & W Wholesale in trucks loaded with blue jeans, as the informant had indicated, Rawls produced a single pair of first-quality, student-size Wranglers and acknowledged that he had 17,000 pairs in two trucks parked at a nearby motel.

■ Martin contends, however, that even if the informant's tip was corroborated by Agent Fradella's on-the-scene observation, there was not probable cause to believe that the jeans being transported were stolen. We disagree.

"Probable cause exists where 'the facts and circumstances within (the arresting officers') knowledge and of which they had reasonably trustworthy information (are) sufficient in themselves to warrant a man of reasonable caution in the belief that' an offense has been or is being committed." *Draper v. United States,* 358 U.S. 307, 313, 79 S.Ct. 329, 333, 3 L.Ed.2d 327 (1959) (quoting *Carroll v. United States,* 267 U.S. 132, 162, 45 S.Ct. 280, 288, 69 L.Ed. 543 (1925)). As the Court recognized in *Brinegar v. United States,* 338 U.S. 160, 174–175, 69 S.Ct. 1302, 1310–1311, 93 L.Ed. 1879 (1948), only the probability and not a prima facie showing of criminal activity is the standard of probable cause. After Agent Fradella was told by the informant on February 1, 1981, that 17,000 pairs of first-quality Wrangler blue jeans were being transported from Birmingham, Alabama, and sold for $4.00 per pair, he learned through independent investigation that over 20,000 pairs of blue jeans had been stolen from the Wrangler plant in Arab, Alabama, on January 18, 1981. He also learned that the cost of manufacturing the type and style of jeans being offered for sale exceeded $4.00 per pair and that the jeans had a normal wholesale price of $8.00. We think that a reasonable person with knowledge of these facts would be warranted in believing that the jeans being offered for sale probably were stolen. Accordingly, we hold that the informant's tip, coupled with both independent and on-the-scene corroboration was sufficient to establish probable cause under the *Aguilar-Spinelli* standard.

### C.

Having decided that there was probable cause to believe that the trucks contained stolen blue jeans, the only question remaining is whether the warrantless search was within the automobile exception to the war-

rant requirement. Martin contends that it was not because (1) the "inherent mobility" rationale of the automobile exception was not applicable since federal officials had the keys to the trucks, and (2) there was not a lessened expectation of privacy in the contents of the trucks as evidenced by the fact that the trucks were locked and the contents were "clearly out of view." In light of *United States v. Newbourn,* 600 F.2d 452 (4th Cir. 1979), and *United States v. Ross,* —— U.S. ——, 102 S.Ct. 2157, 72 L.Ed.2d 572 (1982), we find no merit in Martin's contentions and hold that the warrantless search was lawful under the automobile exception to the warrant requirement.

In *United States v. Newbourn,* 600 F.2d 452 (4th Cir. 1979), a case similar to the present case, this court applied the automobile exception to the warrantless search of the locked trunk of a vehicle parked on the side of a public road. Local police officers had learned from a confidential informant that the defendants would be selling stolen firearms the next morning. When the police officers arrived at the scene the next morning, the defendants were in the cab of a pickup truck negotiating the firearms sale. The automobile in which the defendants had arrived was parked on the shoulder of the road in front of the pickup truck. After the police arrested the defendants, they obtained the keys to the automobile, opened the trunk, and seized the stolen firearms.

The district court found that the warrantless search was unlawful, reasoning that the inherent mobility of the vehicle was not relevant since the defendants were in custody and it would have been practical for the officers to obtain a warrant prior to the search. This court rejected the reasoning of the district court, finding that under *Chambers v. Maroney,* 399 U.S. 42, 90 S.Ct. 1975, 26 L.Ed.2d 419 (1970), there is "no difference (for constitutional purposes) between on the one hand seizing and holding a car before presenting the probable cause issue to a magistrate and on the other hand carrying out an immediate search without a warrant. Given probable cause to search, either course is reasonable under the Fourth Amendment." *Chambers,* 399 U.S. at 51–52, 90 S.Ct. at 1981–1982.

The rationale applied by this court in *Newbourn* recently was reaffirmed by the Supreme Court in *United States v. Ross,* —— U.S. ——, 102 S.Ct. 2157, 72 L.Ed.2d 572 (1982). In *Ross,* the Court acknowledged that under *Chambers v. Maroney,* 399 U.S. 42, 90 S.Ct. 1975, 26 L.Ed.2d 419 (1970), and *Carroll v. United States,* 267 U.S. 132, 45 S.Ct. 280, 69 L.Ed. 543 (1925),[2] law enforcement officers may search an automobile or other mobile vehicle located in a public place without a warrant if there is probable cause to believe that the vehicle is carrying contraband.[3] —— U.S. at ——, 102 S.Ct. at 2163. Further, the Court held that if police officers have probable cause to search a vehicle, they may conduct a

---

**2.** "Having thus established that contraband goods concealed and illegally transported in an automobile or other vehicle may be searched for without a warrant, we come now to consider under what circumstances such search may be made. It would be intolerable and unreasonable if a prohibition agent were authorized to stop every automobile on the chance of finding liquor, and thus subject all persons lawfully using the highways to the inconvenience and indignity of such a search. Travelers may be so stopped in crossing an international boundary, because of national self-protection reasonably requiring one entering the country to identify himself as entitled to come in, and his belongings as effects which may be lawfully brought in. But those lawfully within the country, entitled to use the public highways, have a right to free passage without interruption or search unless there is known to a com-

petent official authorized to search, probable cause for believing that their vehicles are carrying contraband or illegal merchandise."

267 U.S. at 153–154, 45 S.Ct. at 285.

**3.** "Thus, since its earliest days Congress has recognized the impracticability of securing a warrant in cases involving the transportation of contraband goods. It is this impracticability, viewed in historical perspective, that provided the basis for the *Carroll* decision. Given the nature of an automobile in transit, the Court recognized that an immediate intrusion is necessary if police officers are to secure the illicit substance. In this class of cases, the Court (has) held that a warrantless search of an automobile is not unreasonable."

—— U.S. at ——, 102 S.Ct. at 2163.

warrantless search of every part of the vehicle and its contents, including closed containers, that might conceal the object of the search. *Id.* at —— – ——, 102 S.Ct. at 2170–2171. Quite simply, "an individual's expectation of privacy in a vehicle and its contents may not survive if probable cause is given to believe that the vehicle is transporting contraband." *Id.* at ——, 102 S.Ct. at 2171. Having determined that there was probable cause to believe that the trucks contained stolen blue jeans, we hold that the warrantless search of the trucks was lawful under the automobile exception to the warrant requirement.[4]

### III.

■ Martin's final contention on appeal is that his jury conviction should be reversed because the evidence was insufficient to prove beyond a reasonable doubt that the blue jeans he transported were stolen. He argues that the fact the jeans in his possession had the same lot and cut numbers as the jeans stolen from the Wrangler plant in Arab, Alabama, was not sufficient to prove the jeans were stolen because several hundred dozen pairs of jeans with the same lot and cut numbers as those stolen had been shipped out from the Arab, Alabama, plant prior to the theft. While we agree with Martin that the corresponding lot and cut numbers alone would be insufficient to prove beyond a reasonable doubt that the jeans in his possession were stolen, we find that "there is substantial evidence, taking the view most favorable to the Government," *Glasser v. United States,* 315 U.S. 60, 80, 62 S.Ct. 457, 469, 86 L.Ed. 680 (1941), to support the jury's finding on this issue.

At trial the government introduced Eugene Williamson, Manager of the Wrangler plant in Arab, Alabama, as a witness. Williamson testified that he examined the seized jeans, that they had the Arab, Alabama, code number stamped on the back of the buttons and that the lot and cut num-

bers of the jeans corresponded with those stolen from the Arab, Alabama, plant. He testified further that the seized jeans were secured in bundles of one dozen, and that although Wrangler jeans are shipped between plants and stored in this manner, they never are sold in this condition. Another Wrangler representative testified that Wrangler sells only to retail stores, and that on January 31, 1981, jeans of the type in question were being sold for $8.50 per pair and had not been subject to any close-out sales.

We think all of the foregoing evidence, coupled with the fact that Martin was transporting 17,000 pairs of student-size Wrangler jeans from Alabama and selling them for less than the manufacturing cost just two weeks after the same type of blue jeans had been stolen from the Wrangler plant in Arab, Alabama, was sufficient to support the jury's finding that the blue jeans in question were stolen.

### IV.

We hold that the search was lawful under the automobile exception to the warrant requirement because there was probable cause to believe the trucks contained stolen blue jeans. We hold further that the evidence at trial was sufficient to establish that the jeans Martin transported were stolen. Martin's conviction, therefore, is affirmed.

AFFIRMED.

---

4. It is of no consequence that *Ross* was decided subsequent to the decision in the district court. Generally, we must apply a Supreme Court decision construing the Fourth Amendment retroactively to all convictions that were not yet final when the decision was rendered. *See United States v. Johnson,* —— U.S. ——, 102 S.Ct. 2579, 73 L.Ed.2d 202 (1982).